PIENDRY, Chief Judge.
This is an appeal by the plaintiff, Doc Summers Thornton, from an order granting a new trial to the defendants in a personal injury action.
On October 11, 1962, between 3:30 and 4:00 P.M. on a clear, dry day, the plaintiff, sixty-two years of age, sustained personal injuries when a bicycle upon which he was riding was involved in an accident with a 1962 4-door Cadillac sedan. The automobile was owned by the defendant, Fincher Motor Sales, Inc., and was being operated with the owner’s permission and consent by the defendant, Joseph Fishbein. As a result of the accident, plaintiff sued both the operator and the owner of the automobile to recover damages for the injuries sustained.
Following a jury trial, a verdict was returned in plaintiff’s favor in the amount of $50,000.00. The trial court then granted the motion of both defendants for a new trial upon the ground that the trial court erroneously had instructed the jury on the theory of “last clear chance” without an evidentiary basis for submitting the theory to the jury for its consideration.
In its order granting the defendants a new trial, the court found that the evidence at the trial established that there were three basic, but differing versions of the manner in which the accident occurred. The following is the court’s findings concerning the three versions referred to as the “Fishbein” version, the “Bruce” version and the “Cooper” version:
“According to the ‘Fishbein’ version, the defendant was proceeding north near the center line which divided northbound and southbound traffic at a speed of 25 to 30 miles per hour as he was approaching a point about one-half block south of the intersection of Northeast 54th Street. He was on a street known as Federal Highway which accommodates two southbound lanes of traffic and two northbound lanes of traffic, although as it comes within a block or so of 54th Street, the northbound lanes widen so as to accommodate three northbound vehicles. Northbound vehicles have a left turn lane, a through lane and a right turn lane. The defendant was proceeding near the center line and stated that it was his intention to stay next to the center line, going into the left turn lane and turning left when he reached the intersection. Under the ‘Fishbein’ version, the plaintiff was seen by the defendant when the plaintiff was pedaling his bicycle due north in the center or through lane. The plaintiff was proceeding in an ordinary manner at a reasonable speed for bicycles. He was in the center of the center lane. Since the defendant was keeping his vehicle next to the center line, his automobile was veering to the west and was entering the left turn lane. At a point approximately due west of a driveway, otherwise indicated in the record as emerging from the rear of certain store buildings which are east of Federal Highway and between Federal Highway and Biscayne Boulevard, the accident occurred. According to Fishbein, he kept the plaintiff in his range of vision until the front of his automobile had passed the plaintiff. When last seen, the plaintiff was still pedaling due north in the center of the center lane. After the front of the defendant’s automobile had passed the plaintiff and the defendant had directed his attention to the intersection ahead, he heard or felt a thump to the side of his automobile. The defendant testifies that he at no time entered the plaintiff’s lane nor did he ever see the plaintiff straying from a due north course in the lane which was to the defendant’s right. Following the accident, the defendant found damage to the right *776 door of his vehicle. This led the defendant to believe that this had been the point of impact since he testified that that particular damage was not present prior to the accident. He testified that a detailed and careful examination of his vehicle showed no damage other than to the right rear door.
“Under the ‘Bruce’ version, the impact did not occur at the side of the automobile, which is the gist of the Fishbein version, but occurred at the right front corner of the automobile and a point near the front of the bicycle where the main supporting strut or fork descends from the point on the frame just below the handlebars to the axle of the front wheel. The bicycle was in evidence and this alleged point of impact was demonstrated by a point of damage on this strut several inches above the axle in the front wheel. Further damage on the bicycle consisted of impressions in the soft wire basket which, under the ‘Bruce’ version, matched the configuration of the right front fender of the automobile. Mr. Bruce was placed on the stand by the plaintiff as a traffic analyst, or reconstruction expert, and he had taken the bicycle in question to the scene of the accident and had several posed photographs that were admitted into evidence expounding his theory. His photographs showed the bicycle being held against the right front fender of the automobile in such a way as to match the configuration of the front of the automobile with the points of damage on the bicycle. Mr. Bruce’s testimony and these photographs show that even under this version the bicycle was primarily to the side of the automobile at the time of the impact and that the impact was a very short distance from the line on the pavement dividing the lanes. Mr. Bruce’s version indicates that the bicycle had, in fact, been proceeding in a northerly direction to the right and east of the automobile shortly prior to the impact.
“Under the ‘Cooper’ version, which is the version submitted by the plaintiff in support of the contention that the doctrine of last clear chance applies to this case, the bicycle was not proceeding in a northerly direction prior to impact but was proceeding due west across the roadway, having emerged from the aforementioned driveway. Lester Cooper, a service station attendant, who testified that he was standing at a point north of where the accident occurred and slightly west of it, indicated that the plaintiff pedaled his bicycle from a parking lot, across the sidewalk, down the driveway, across the right turn lane, the through lane, and into the left turn lane before it was struck by the front of the northbound automobile. Under this version, the plaintiff never looked to his right or left before entering the roadway or thereafter and proceeded due west without turning the bicycle at any time. The impact was to the front of the automobile at a point between the center and the right front fender. Plaintiff’s counsel developed from the defendant that the plaintiff was never seen proceeding in the manner described by Cooper. Under the Cooper version, the impact would be a few feet west of the lines dividing the lanes.”
The court determined that none of the above-described versions admits the doctrine of last clear chance into a proper consideration of this case since the required elements listed in James v. Keene, Fla.1961, 133 So.2d 297 are not present. Further, the case of Connolly v. Steakley, Fla.App.1964, 165 So.2d 784 indicates that the doctrine would be inapplicable to the Cooper version.
The required elements which must be present in order to justify an instruction on the doctrine of last clear chance are set forth in James v. Keene, supra, as well as the admonition that the instruction should be given only where the evidence clearly demonstrates its applicability. Yet, it is reversible error not to so instruct the jury “[wjhere findings of fact *777 compatible with the doctrine of last clear chance are within the range of those permissible to be made by the jury on the evidence [1] * *
It is apparent that the trial judge, in determining that the opinion in Connolly v. Stealdey, supra, indicates that the doctrine would be inapplicable to the Cooper version, found that the plaintiff was not in a position of peril when the defendant, Fishbein, first saw him; that he came into a position of peril by his inattention and could have gotten himself out of the situation had he been careful.
However, a review of decisions on this point reveals that a plaintiff may already be in a position of peril even though he is not directly in the path of the defendant’s oncoming vehicle. The Supreme Court of Missouri has stated that, “[I]f a plaintiff is approaching the pathway of the defendant on a course which, unless he stops, will produce a collision and if he is at the time oblivious to the presence and approach of the defendant, this in itself will cause him to be in a position of peril and not merely approaching a position of peril.” [2] Under the Cooper version, the plaintiff never looked to his right or left before entering the roadway or thereafter and proceeded due west without turning the bicycle at any time. This, coupled with the fact that the defendant, Fishbein, saw the plaintiff in time to avoid a collision and in the exercise of ordinary prudence ought to have been aware of the plaintiff’s inattentiveness leads us to the conclusion that there was sufficient evidence to submit the doctrine of last clear chance to the jury.
While we are mindful of the broad discretion vested in a trial judge, in ruling on a motion for a new trial and the , strong burden placed upon the party who seeks reversal of an order granting a new trial,[3] we have concluded that there is a clear showing that the trial judge abused his discretion in ordering a new trial.
Accordingly, the order granting a new trial is reversed and the judgment entered pursuant to the jury verdict is reinstated.
Reversed.

. Radtko v. Loud, Fla.App.1957, 98 So.2d 891, 894; see also Kravitz v. Morse Auto Rentals, Inc., Fla.App.1964, 166 So.2d 619.

. State ex rel. Rosanbalm v. Shain, 349 Mo. 27, 159 S.W.2d 582, 586.

. Cloud v. Fallis, Fla.1959, 110 So.2d 669; Gibson v. Frierson, Fla.App.1963, 159 So. 2d 117.