197 So.2d 524 (1967)
Catherine E. CONNOLLY and Martin J. Connolly, Husband and Wife, Petitioners,
v.
Wiley C. STEAKLEY, Respondent.
No. 33710.
Supreme Court of Florida.
January 25, 1967.
Rehearing Denied April 12, 1967.
*525 Early & Early, Sarasota, for petitioners.
Grimes, Grimes, Goebel & Parry, Bradenton, for respondent.
PER CURIAM.
Writ of certiorari having heretofore issued, argument having been heard, and the court having examined the record and briefs, it appears that the writ was improvidently issued. Accordingly, the writ of certiorari heretofore issued in this cause is discharged.
It is so ordered.
THORNAL, C.J., ROBERTS and BARNS (Retired), JJ., and McCORD, Circuit Judge, concur.
O'CONNELL, J., concurs specially with opinion.
DREW, J., dissents with opinion.
O'CONNELL, Justice (concurring specially):
Petitioners, the Connollys, seek review by certiorari, on conflict theory, of the decision of the District Court of Appeal reported at 165 So.2d 784. As will be explained later, that conflict does exist.
This case involves the applicability of the doctrine of last clear chance. In order to discuss the conflict between the subject decision of the District Court and that of this Court in James v. Keene, Fla. 1961, 133 So.2d 297, it is necessary that I discuss again in an extended manner the doctrine of last clear chance as this court has done on three prior occasions. James v. Keene, supra; Wawner v. Sellic Stone Studio, Fla. 1954, 74 So.2d 574; and Merchants' Transportation Co. v. Daniel, 1933, 109 Fla. 496, 149 So. 401. Florida's concern over the proper definition and application of this doctrine is understandable. As Dean Prosser observed, "the last clear chance cases present one of the worst tangles known to the law." 51 Mich.L. Rev. 465, 473 (1953). Nevertheless, since the doctrine is a part of the law of Florida this court must continue to strive to improve understanding of its application.
There is general agreement that the last clear chance doctrine (also variously known as the "humanitarian doctrine," "the doctrine of discovered peril," "the doctrine of subsequent negligence," "the doctrine of supervening negligence," and similar names) developed, if it did not originate, as a way of mitigating the harshness of the common law rule of contributory negligence. Stated very simply, the effect of the doctrine is that in certain prescribed circumstances the plaintiff in a negligence action will not be precluded from recovery by the fact that his own negligence contributed to his injury.
My concern here is with identifying the kinds of situations in which last clear chance is properly applied. Some of the operative factors in the doctrine's application are fixed, in the sense that they must always be present. Others are variables and therefore result in different categories of factual situations in which it is appropriate to consider application of the last clear chance rule. Among the fixed, or *526 universal, factors are these: (1) The plaintiff must have been guilty of negligence which placed him in a position of peril; (2) There must be something about the plaintiff's situation that would serve to put the injuring party (the defendant) on notice of the fact that plaintiff is in peril; (3) The defendant must have been under a legal duty to notice and appreciate plaintiff's peril and to avoid inflicting injury upon him; (4) The defendant must have had a capability, under existing circumstances, to avoid inflicting the injury; and (5) The defendant must have failed to take advantage of this opportunity, with resulting injury to the plaintiff.
The decisions applying last clear chance have turned on two variables relating to the plaintiff and two others relating to the defendant. Therefore, taken with the fixed factors already listed, these result in four categories of factual situations in which application of the last clear chance rule can properly be considered. The description of these categories contained in 2 Harper and James, The Law of Torts, p. 1245, is adequate:
"(1) Where plaintiff is in peril and is unable to get out of it by the exercise of reasonable care, and defendant knows plaintiff's position and either realizes or has reason to realize the danger to plaintiff, and thereafter could have avoided the injury by the use of reasonable care.
"(2) Where plaintiff is similarly in helpless peril and defendant, though he did not discover plaintiff, would have discovered and appreciated plaintiff's danger in time to avoid injuring him by the use of reasonable care, had defendant exercised the vigilance which the law required of him for plaintiff's protection.
"(3) Where plaintiff himself could avoid danger by checking his approach to it or by stepping out of its path but fails to do so because of negligent inattention, and defendant knows plaintiff's position and realizes or has reason to realize his inattention, and after such knowledge and (actual or constructive) realization could have avoided injury by the use of reasonable care.
"(4) Where both plaintiff and defendant are negligently inattentive, but defendant would have discovered and realized plaintiff's danger, had he exercised the vigilance he owed to plaintiff, in time to avoid injuring plaintiff by the use of reasonable care."
I shall refer to these four situations as Categories One, Two, Three and Four.
Category One presents the kind of situation in which the last clear chance rule is applied by nearly all jurisdictions. 2 Harper and James, p. 1246; 65A C.J.S. Negligence § 137; 92 A.L.R. 83; 119 A.L.R. 1052; 171 A.L.R. 375. Moreover, this is the category to which the most frequently encountered rationale for the rule  that defendant was the last wrongdoer  applies most appropriately. It it true that in this circumstance the plaintiff's negligence has put him in the position of peril and therefore contributed to his injury. Even so, under this hypothetical his negligence could have ceased before that of the defendant occurred. Therefore, in a very real sense the defendant would be the last wrongdoer in such situations.
In Category Two cases, in which plaintiff is also in helpless peril, liability is imposed on the basis of defendant's failure to avoid the injury when he ought to have known, as opposed to having actually known, of the plaintiff's predicament. Most, though not all, jurisdictions apply the doctrine in situations of this category. 2 Harper and James, p. 1246; 65A C.J.S. Negligence, § 137; 92 A.L.R. 86; 119 A.L.R. 1055; 171 A.L.R. 379. As with Category One, application of the doctrine to this category of situations can also be rationalized with some accuracy in terms of last wrongdoer and proximate cause principles. As before, plaintiff's negligence has terminated and is followed by that of the defendant. Here, *527 the negligence of the defendant is in failing to discover the plaintiff's predicament rather than in failing to avoid injuring one whose peril he actually knew about. Nevertheless, though his negligence may perhaps be less culpable than under Category One, he is still the last wrongdoer in the literal sense.
A considerable number of jurisdictions also apply the last clear chance rule to situations in the third category. 2 Harper and James, p. 1246; 65A C.J.S. Negligence § 137; 92 A.L.R. 101; 119 A.L.R. 1069; 171 A.L.R. 395. Here, although the plaintiff is in a position of peril, he is not helpless but only inattentive and unaware of his own peril. Although defendant actually sees the plaintiff and is aware of his peril and inattentiveness in time to avoid injuring him, he fails for some reason to take advantage of the opportunity to avoid the injury. Obviously, this application of the rule is not easily rationalized in terms of last wrongdoer principles. The negligence of the plaintiff, consisting of inattentiveness concerning his own safety, and the negligence of the defendant, in failing to avoid the injury, both continue to the time of the accident. Although their respective acts of negligence differ in kind, they are actually concurrent. Although the negligence of defendant may be the more culpable, he is in no sense the last wrongdoer. It has been suggested that the comparative negligence principle would provide a better rationalization in this circumstance. Harper and James, p. 1252. Be that as it may, most jurisdictions view this kind of situation as a proper one for the application of the last clear chance rule.
The fourth category is as noncontroversial as the first, for substantially all jurisdictions, apparently excepting only Missouri and Connecticut, refuse to apply the doctrine in this circumstance. 2 Harper and James, p. 1246, 65A C.J.S. Negligence § 137; 92 A.L.R. 128; 119 A.L.R. 1075; 171 A.L.R. 403. Here the negligent acts of plaintiff and defendant are not only concurrent, but also equivalent. The negligent failure of the plaintiff to discover his own peril is matched by the negligent failure of the defendant to discover the peril of the plaintiff. It is generally recognized that there is no valid reason to prefer the plaintiff in such situations. It is apparent that refusal to apply the rule in this circumstance can be explained in terms of last wrongdoer principles, for neither party is the last wrongdoer.
This Court gave its first explicit recognition to the last clear chance doctrine in the case of Merchants' Transp. Co. v. Daniel, 1933, 109 Fla. 496, 149 So. 401. That was an action brought by a widow for the wrongful death of her husband who had been struck by defendant's truck. The deceased was employed by the county as a road foreman and was, at the time of his death, working with a group of men on a narrow bridge. Defendant driver of the truck approached the bridge from around a curve in the road at a high rate of speed. Despite the fact that he had a clear view of the bridge for some two hundred feet, defendant failed to see the work group in time to avoid running into them and killing plaintiff's deceased. Chief Justice Davis, writing for the court, set out a complete and accurate doctrinal statement of the circumstances calling for the application of the last clear chance doctrine. After noting the absence of general agreement among the various jurisdictions concerning its application, he continued, at p. 403:
"It is certain however that there are two situations in which it is uniformly applied: (1) Assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, whenever the person in control of a motor vehicle actually sees his situation and should appreciate his danger, the last clear chance rule applies without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury." (Emphasis added.)
*528 Note that the quotation to this point constitutes an entirely accurate statement concerning the appropriateness of the application of the rule to Categories One and Three, as described above. Chief Justice Davis continued:
"(2) Where the person in control of a motor vehicle, by keeping a reasonably careful lookout, commensurate with the dangerous character of the motor vehicle while in operation and the nature of the locality, could have discovered and appreciated another's perilous situation in time by the exercise of reasonable care to avoid injuring him, and the injury results from the failure to keep such lookout and to exercise such care, then the last clear chance rule applies, regardless of the injured person's prior negligence whenever that negligence has terminated, or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This latter phase of the rule applies whenever injury results from new negligence, or from a continuance of the operator's negligence after that of the injured party has so ceased or culminated."
This second segment of the quotation from Chief Justice Davis' opinion constitutes an accurate  indeed, a classic  statement of the applicability of the rule to Category Two situations, as described above.
It is evident, therefore, that this court did, in the beginning, take a forthright, well-defined, and enlightened position regarding the application of the last clear chance doctrine. The statement quoted above from the Daniel opinion is a good one, in perfect accord with the position taken by most other American jurisdictions as set out in the so-called "Washington formula." Mosso v. E.H. Stanton Co., 1913, 75 Wash. 220, 134 P. 941, and Leftridge v. City of Seattle, 1924, 130 Wash. 541, 228 P. 302; also see Restatement of Torts, §§ 479 and 480, and Annot. 92 A.L.R. 47, 66. In sum, this position calls for the application of the rule, assuming the presence of the fixed elements listed above, to permit recovery against a defendant who has actual knowledge of the plaintiff's peril, even though the plaintiff's contributory negligence, in the form of obliviousness to his own peril, continued to the instant of impact; but to permit recovery against a defendant having only constructive knowledge of plaintiff's peril only when the plaintiff's negligence has terminated, leaving him in a helpless position, in a position of peril from which he cannot, with reasonable effort and care, extricate himself.
During the period from the Daniel case to the present, this court and the district courts of appeal have affirmed this position by approving or requiring application of the doctrine on Category Two cases, White v. Hughes, 1939, 139 Fla. 54, 190 So. 446; James v. Keene, Fla. 1961, 133 So.2d 297; Baker v. Stolley, Fla.App. 1963, 155 So.2d 809; Golden v. Harrell, Fla. App. 1962, 147 So.2d 350; Miller v. Ungar, 1941, 149 Fla. 79, 5 So.2d 598, and Category Three cases, Wawner v. Sellic Stone Studio, Fla. 1939, 74 So.2d 574; Radtke v. Loud, Fla.App. 1957, 98 So.2d 891; Hodell v. Snyder, Fla.App. 1960, 122 So.2d 36; Parker v. Perfection Cooperative Dairies, Fla.App. 1958, 102 So.2d 645; Purdue v. Vogelsang, Fla.App. 1964, 166 So.2d 902. Apparently, no case involving application of the rule in the circumstance of Category One has been the subject of review by the appellate courts of this State. However, since application of the rule in Category One situations is so non-controversial, this dearth of cases is understandable.
Unfortunately, the influence of the Daniel opinion has not been limited to the portion here quoted. Oother language contained therein sought to rationalize the place of last clear chance in our negligence jurisprudence, and I think that it has been a source of mischief, as will be subsequently explained. The portion of the *529 Daniel opinion of which I speak appears at 149 So. at 403:
"The party who last has a clear opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. Such is a simple statement of the doctrine of `the last clear chance.' The last clear chance doctrine is not an exception to the general doctrine of contributory negligence. It does not permit one to recover in spite of his contributory negligence, but merely operates to relieve the negligence of a plaintiff or deceased in a particular instance, which would otherwise be regarded as contributory, from its character as such. This result it accomplishes by characterizing the negligence of the defendant, if it intervenes between the negligence of plaintiff or deceased, and the accident, as the sole proximate cause of the injury, and the plaintiff's antecedent negligence merely as a condition or remote cause. The antecedent negligence of the plaintiff or deceased having been thus relegated to the position of a condition or remote cause of the accident, it cannot be regarded as contributory, since it is well established that negligence, in order to be contributory, must be one of the proximate causes."
This is a more or less typical statement of the proximate cause rationale, and it has been repeated, either literally or in substance, in a considerable number of subsequent opinions of this court and of the district courts of appeal. Dunn Bus Service v. McKinley, 1937, 130 Fla. 778, 178 So. 865; Miami Beach R. Co. v. Dohme, 1938, 131 Fla. 171, 179 So. 166; Davis v. Cuesta, 1941, 146 Fla. 471, 1 So.2d 475; Williams v. Sauls, 1942, 151 Fla. 270, 9 So.2d 369; Poindexter v. Seaboard Air Line R. Co., Fla. 1951, 56 So.2d 905; Shattuck v. Mullen, Fla.App. 1959, 115 So.2d 597; James v. Keene, Fla.App. 1960, 121 So.2d 186; Holdsworth v. Crews, Fla.App. 1961, 129 So.2d 153. Nor is this a particularly unique statement. It is well known that courts of most American jurisdictions have been much afflicted with this propensity to seek a single proximate cause for every accidental injury and to explain the application of last clear chance in terms of last wrongdoer and proximate cause principles. Green, 6 N.C.L.Rev. 3, 24 (1927). I have concluded that this attempted explanation was not only wrong, but productive of harmful results as well.
For one thing, I agree with Leon Green that the attempted explanation constitutes a misapplication of the idea of proximate cause. As he put it, Ibid., at 6-7:
"Let it be emphasized unqualifiedly that causal relation is an element in every cause of action and in every defense. It must be present for any action or defense to be sustained. It is a universal for every action. A defendant's conduct must be an appreciable factor in causing plaintiff's injury before plaintiff can recover. Plaintiff's contributing negligence must be a substantial factor in his own hurt to defeat his recovery. But when this is said, all is said."
In other words, the proximate cause concept is useful  even indispensable  in determining whether a particular act of negligence is causally related to the injury sustained  that is, whether it is relevant. But it is a perversion of this concept to attempt to use it to distinguish between or among multiple acts of negligence, all of which were causally related to the injury. And this is what is obviously attempted when this concept is used to explain the transfer of liability for an injury from the plaintiff to the defendant by application of the last clear chance rule.
The consequences of the attempted explanation in terms of proximate cause are even more serious. One is the encouragement that it gives to seek a single proximate cause of every accidental injury. Perhaps the reason for this is simply that the transition from the notion of a proximate cause to that of the proximate cause *530 is such an easy one to make. However this may be, the language quoted above from the Daniel opinion, which is typical of judicial pronouncements on the subject, clearly reveals this tendency. Note that the antecedent negligence of the plaintiff was "relegated to the position of a condition or remote cause of the accident," and therefore could not even be regarded as contributory. Of course, if this reasoning were correct, one could legitimately inquire, Why should last clear chance be invoked at all, since it applies only when plaintiff has been contributorily negligent?
Harper and James, Ibid., Sec. 22.12, draw a telling indictment against the intrusion of such notions into the law of last clear chance:
"According to the typical modern judicial statement, the last clear chance rule is no more than a logically necessary deduction from the principles of proximate cause. Under it plaintiff can recover because his negligence is but a `condition' or `remote cause' of his injury, the defendant's wrong its sole `proximate cause.' Now it must be obvious at once that this explanation cannot stand the most superficial analysis if it purports to apply to plaintiff the tests of legal cause generally used today in the inquiry as to a defendant's liability. This has often been demonstrated. Certainly if a man's negligence has put himself or his property in a position of peril, that negligence is a proximate cause of the injury which follows when the perils of the position become realized. In such case the likelihood of the danger that befell was one of the very things that made his original act negligent, and probable consequences are proximate ones. This is no less true when the danger comes from the foreseeable tortious intervention of a responsible being. Here too a third person injured by the event may hold the earlier as well as the later wrongdoer."
Other writers have also inveighed against the proximate cause  last wrongdoer rationale of the last clear chance doctrine. See Winfield on Torts, 7th ed., pp. 231-32, and Salmon on Torts, 3rd ed., pp. 39-43 and 13th ed., p. 461.
A second consequence of the proximate cause  last wrongdoer rationalization is a corollary of the one just discussed. It is that last clear chance is made automatically applicable in every case in which injury results from the combined negligence of both parties, including fact situations falling within what I have termed Category Four cases. After all, the negligent act of one of the parties must always occur last in point of time. Careful analysis of the following cases will reveal that the opinion in each speaks of last clear chance in terms either of last wrongdoer or proximate cause. Further, each permits the conclusion that the doctrine is applicable in what appear to be Category Four situations. Lindsay v. Thomas, 1937, 128 Fla. 293, 174 So. 418; Dunn Bus Service v. McKinley, 1937, 130 Fla. 778, 178 So. 865; Miami Beach Ry. Co. v. Dohme, 1938, 131 Fla. 171, 179 So. 166; Davis v. Cuesta, 1941, 146 Fla. 471, 1 So.2d 475; Brandt v. Dodd, 1942, 150 Fla. 635, 8 So.2d 471; Williams v. Sauls, 1942, 151 Fla. 270, 9 So.2d 369; Petroleum Carrier Corp. v. Hall, 1947, 158 Fla. 549, 29 So.2d 624; Panama City Transit Co. v. Du Vernoy, 1948, 159 Fla. 890, 33 So.2d 48; Poindexter v. Seaboard Air Line R. Co., Fla. 1951, 56 So.2d 905; Rosenfeld v. Knowlton, Fla.App. 1959, 110 So.2d 90; Royal Kitchen Cabinet Corp. v. Palcic, Fla.App. 1959, 111 So.2d 42; Huff v. Belcastro, Fla.App. 1961, 127 So.2d 476; Holdsworth v. Crews, Fla.App. 1961, 129 So.2d 153, and Springer v. Morris, Fla. 1954, 74 So.2d 781.
It would unduly extend an already lengthy opinion to attempt any analysis of the individual cases just cited. Suffice it to say, therefore, that to the extent that any of our previous holdings apparently authorize application of the last clear chance doctrine in what we have termed Category Four situations, I would recede from them.
*531 In view of the comprehensive character of the analysis of the last clear chance doctrine that I have attempted, it is appropriate that I digress briefly to deal with an issue which is not raised by the instant case, but which nonetheless may arise in future application of the doctrine. I refer to the question whether the last clear chance doctrine may be applied to a plaintiff on behalf of a defendant. Although there is authority in our cases for such application, Miami Beach Ry. Co. v. Dohme, 1938, 131 Fla. 171, 179 So. 166, it seems obvious that this usage is logically precluded by our rejection herein of the proximate cause rationale for the doctrine. Needless to say, this conclusion, if followed, would return Florida to the great majority of jurisdictions, which view the last clear chance doctrine as being in mitigation of the harshness of the contributory negligence rule in appropriate circumstances. Although application of the doctrine on behalf of the defendant may do no real harm, it would further confuse an already difficult area of the law.
I come then to the task of comparing the decision of the district court in the instant case with that in James v. Keene, supra, with which jurisdictional conflict is alleged. The essential facts herein are these: Petitioner-plaintiff was struck by the defendant's west-bound auto as she was crossing from the north to the south side of a two-way street, at a point between two intersections. The accident occurred between 6:30 and 7:00 o'clock on the morning of December 12, 1961. Petitioner was seventy-eight years old, had imperfect vision and hearing, and was not wearing her hearing aid. She neither saw nor heard the respondent-defendant's auto before she was struck. The collision occurred at or near the center of the street, which was approximately thirty feet wide.
Respondent, who was eighty-one years of age, was driving westward within the speed limit of twenty-five miles per hour, with his driving lights on. He testified that when he first saw petitioner she was five to seven feet from the north curb. He immediately applied his brakes and swerved to the left. The left skid marks began on the right side of the center line of the street and ended about three feet on the left side of the center line.
The trial judge denied plaintiff's request for an instruction on last clear chance, and the jury returned a verdict for the defendant. On appeal, the District Court of Appeal, Second District, affirmed, on the ground that the first prerequisite for application of the last clear chance rule  that plaintiff's own negligence must have placed her in a position of peril  was lacking.
The opinion of the district court of appeal did two separate things, and each must be dealt with individually. It summarized the factual situations in which the last clear chance doctrine is applicable; and it offered, by implication, a definition of what constitutes a "position of peril."
After correctly observing that the last clear chance rule is applicable only when the plaintiff's own negligence has placed him in a position of peril, the district court of appeal offered the following statement concerning the factual situations in which the doctrine is applicable:
"If * * * the defendant actually sees the plaintiff's dangerous situation and should appreciate the plaintiff's danger, the plaintiff may invoke the doctrine even if the plaintiff's negligence continues, and concurs with the negligence of the defendant up to the very instant of the injury. But if, instead of actually seeing the plaintiff's dangerous situation, the defendant merely could have seen it and appreciated it, had the defendant used due care, the plaintiff can invoke the doctrine only if the plaintiff's negligence terminated, or culminated in a situation of peril from which the exercise of due care on the plaintiff's part would not thereafter extricate him, and the defendant thereafter could have avoided injuring the plaintiff by exercising *532 reasonable care, but failed to do so. The prime factor, in the `could have seen' as distinguished from the `actually saw' situations, with respect to the plaintiff's negligence, seems to be whether the plaintiff could have gotten himself out of the dangerous situation if he had used due care (in which event the plaintiff himself had the last clear chance to avoid his injury), or whether the plaintiff could not do so, but the defendant could have avoided injuring him (in which event the defendant had the last clear chance to avoid injuring the plaintiff)."
If one simply ignores the last sentence of this quotation, which attempts to force the subject doctrine into the discredited last wrongdoer matrix, it can be seen that this constitutes an unambiguous statement of the majority position concerning the doctrine's applicability. The first sentence describes the situations encompassed by Categories One and Two as defined earlier in the present opinion. With equal clarity, the second of the quoted sentences authorizes application of the doctrine to Category Three situations and excludes from its operation Category Four situations. Indeed, the quoted language is substantially the same as the classic formulation of Merchants' Transp. Co. v. Daniel, supra.
This brings us to the case of James v. Keene, supra, and the question of conflict. In the Keene case the trial court refused a last clear chance instruction, the district court affirmed, and we reversed, holding that the instruction should have been given. In our opinion we quoted the elements essential to application of the doctrine as stated in Parker v. Perfection Cooperative Dairies, Fla.App. 1958, 102 So.2d 645, 647:
"`(1) That the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact, but also that the party in peril either reasonably cannot escape from it, or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care.'"
Analysis of the quoted statement will reveal that elements (1), (3) and (4) are the same as those identified earlier herein as being the universally accepted prerequisites for application of the doctrine. But in stating element (2) I think we, and the district court in Parker, painted with too broad a brush.
To understand the point to be made here it is necessary to recall that in addition to the fixed factors which are universally required for application of the doctrine, there are two variables that apply to the injured person, the plaintiff, and two which apply to the injuring person, the defendant. Combining these variables in every possible way results in the four categories of factual situations which I have used as the basis of our analysis.
The specific complaint against element (2), stated in the Keene and Parker cases, is that it contains all the variable factors and therefore would permit application of the doctrine in all four categories, including Category Four. As to the injuring party, it states that the doctrine should apply when he "then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware * * * of that fact [i.e., that the injured party has already come into a position of peril. Emphasis added.]" As to the injured party, the quoted formula would make the doctrine applicable when he "either reasonably cannot escape from it [i.e., when he is in helpless peril], or apparently will not avail himself of opportunities open to him for doing so [i.e., he is guilty of continuing negligence]." Thus, under this statement *533 the doctrine could be applied in a situation in which the plaintiff and defendant are equally guilty of negligent inattention. As stated earlier, in such a circumstance there is no logical reason to prefer one person's negligence over that of the other.
The foregoing analysis of the doctrinal statement in the Keene and Parker cases receives impressive confirmation from other sources. For one thing, the statement quoted from those cases can be traced to an early Connecticut case, Fine v. Connecticut Co., 1918, 92 Conn. 626, 103 A. 901, in which it apparently originated. However, as pointed out in the annotation at 119 A.L.R. 1041, 1083, the Connecticut courts in applying the last clear chance doctrine are unique in that they make no distinction between defendants who have actual knowledge of the plaintiff's plight and those who have only constructive knowledge. Therefore, a doctrinal statement that accurately stated the Connecticut position was hardly appropriate for that same purpose in a Florida decision.
Further compelling evidence that the doctrinal statement of the Keene and Parker cases is indeed susceptible to the construction that I have placed on it can be seen in a number of subsequent decisions by the district courts of appeal. Holdsworth v. Crews, Fla.App. 1961, 129 So.2d 153; Frohm v. Metzger, Fla.App. 1961, 134 So.2d 254; Greenfield v. Frantz, Fla.App. 1962, 144 So.2d 878; Naber v. Scott, Fla.App. 1963, 149 So.2d 365; Whitten v. Erny, Fla.App. 1963, 152 So.2d 510; Souvorin v. Lerich, Fla.App. 1965, 180 So.2d 180, 181, and Medlock v. McCoy, Fla. App. 1966, 183 So.2d 267.
In each of the cases cited but one, the district court of appeal expressly relied on the doctrinal statement from the Keene case to justify application of the last clear chance doctrine to what was either patently or possibly a Category Four situation. The Holdsworth case, which was decided prior to our opinion in Keene, relied on the same doctrinal statement as contained in the Parker case.
Although limitations of space prevent analysis of each of these decisions in detail, it does seem appropriate to discuss briefly the one that illustrates most clearly the impact that the rule laid down in the Keene and Parker cases has had. In Whitten v. Erny, supra, the District Court of Appeal, Second District, reversed a judgment for the defendant on the ground that the trial court had erred in refusing to give an instruction on last clear chance. The following portion of the court's opinion clearly reveals the implications of that holding that are so relevant here. Said the court, 152 So.2d at p. 511:
"The record indicates that the court's refusal was based on its conclusion that the evidence indicated that neither party was aware of the other until the moment of impact and, in accord with the `mutual inattentiveness' theory enunciated in James v. Keene, Fla.App. 1960, 121 So.2d 186, the doctrine of last clear chance was inapplicable.
"While the lower court was entirely correct in finding that the Third District Court's decision in James v. Keene, supra, rendered the doctrine of last clear chance inapplicable in the instant case, it erred nonetheless in that the Supreme Court subsequently reviewed and reversed the District Court and repudiated the `mutual inattentiveness' theory enunciated by the latter court."
It is difficult to imagine more compelling proof than this that the Keene opinion has had the effect of authorizing the application of last clear chance to Category Four situations, i.e., to cases in which both parties were guilty of negligent inattention.
Although, as I have shown, the Parker and Keene cases had the effect of bringing this profound change to Florida's law of last clear chance, the evidence is strong that neither court actually intended this *534 result. For example, not only is the opinion in the Parker case entirely lacking in any language suggesting that the court intended to work any such alteration in the state's policy, but it contains positive indications to the contrary. The effect of that opinion was to affirm the trial court in giving the defendant's requested instruction on last clear chance, which read as follows, 102 So.2d at 646:
"`If you find that Albert Parker [the plaintiff] was negligent in driving the car as he was, and you find that his negligence continued on to the collision, then you will not apply the doctrine of last clear chance unless you find that after Emery Ryan [the defendant] actually saw the car, he had a clear opportunity to avoid the collision by the use of ordinary care.'"
This was a perfectly adequate and entirely accurate instruction under the prevailing doctrine. Its effect was to preclude the jury from applying the last clear chance doctrine in the event it found that a Category Four situation existed. There was therefore no reason for the court to adopt a new formula for the application of the doctrine, and it can only be concluded that the full implications of the Connecticut formula had escaped the attention of the district court of appeal. Similarly, it can be safely said that this court did not, by its opinion in James v. Keene, intend to authorize the application of the doctrine in Category Four cases, i.e., cases in which both parties are negligently inattentive.
Thus, on grounds of both policy and my interpretation of the relevant opinions, I think it is necessary that this court recede from the criticized statement adopted in Parker v. Perfection Cooperative Dairies, supra, and ostensibly affirmed by this court in James v. Keene, supra. I would approve the doctrinal statement contained in the opinion of the district court now under review, exclusive, however, of the language by which it purports to explain last clear chance in terms of proximate causation.
The second aspect of the instant decision with which I would deal concerns the question whether plaintiff was in a position of peril. Actually, the district court appears to have found that this primary prerequisite for the application of last clear chance was lacking, for it said,
"At the time that the defendant first saw the plaintiff she was in the street which was 30 feet wide about five or seven feet from its curb. Thus it does not appear that the plaintiff was in a position of peril when the defendant saw her. She came into a position of peril thereafter by continuing to walk with inattention, thus her negligence continued up to the time of the collision. The plaintiff never saw the car until she was struck. She could have gotten herself out of the dangerous situation if she had been careful."
Perhaps it would be well first to dispose of a preliminary objection to the language used. It seems, at one place, to proceed on the premise that there is some relationship between the coming into a position of peril and the question whether plaintiff's negligence continues or has terminated. Actually, the two are quite unrelated. True, application of the last clear chance rule requires that plaintiff's own negligence must have brought her into a position of peril. However, once in a position of peril, her negligence may continue, as where she remains oblivious to her peril; or it may terminate, as where she discovers her peril but is unable to extricate herself therefrom before being injured by the defendant.
More serious, however, is the extent to which the court's reasoning seems based upon an array of figures indicating various distances  width of the street, the width of the car, the distance between the curb and the position of the plaintiff, and so forth. Note, in this same connection, the language *535 by which respondent attempted to pose the question presented herein:
"Is a pedestrian, who is only 5 to 7 feet from the north curb of an east-west street and who is walking south across that street which is 30 feet in width, as a matter of law, in a position of peril where the undisputed evidence shows the driver of the oncoming west-bound car was within 1 to 1 1/2 feet of the center of the street?"
The clear implication is that the plaintiff is in a position of peril only when he actually occupies a position in the direct geographic path of the injuring vehicle.
Such an arid manipulation of figures cannot be sustained as the basis for determining whether plaintiff was in a position of peril. I would not accept any conception of position of peril as adequate that does not also take account of the relative motion of both parties. Assuming obliviousness to danger, a plaintiff who is not yet in the actual path of the approaching vehicle but who is obviously on a collision course with it is surely in greater peril than a plaintiff who, though actually within the geographic path of the approaching vehicle, will be well out of the way when the latter vehicle arrives at the point traversed.
It is surprising that the literature and the cases of the various jurisdictions, including Florida, do not contain more discussion of this point. Actually, Missouri and Connecticut appear to be the only jurisdictions that have attempted anything like a systematic definition of "position of peril." But perhaps this is not particularly surprising, for these are the states that have adopted the most liberal attitude toward the application of the rule. Both, for example, would apply it in what I have called Category Four situations.
Interestingly enough, the definitions adopted by those two jurisdictions are not even very similar; indeed, they are quite dissimilar. Harper and James, p. 1251, n. 24, comment as follows concerning the Connecticut attitude:
"Connecticut does not make any distinction between defendants who see and those who do not see plaintiff's danger. * * * Connecticut courts do, however, distinguish between the case where an inattentive plaintiff is in the geographical zone of peril (though he could step out of it easily if he woke up to his situation) and the plaintiff who is inattentively approaching peril (though he could stop in his tracks if he but would). The former may have the benefit of last clear chance against either an aware or an inattentive defendant * * *. The latter has it against neither. * * *"
The authors comment appropriately, "This is logic-chopping  a merely mechanical application of the distinction between active and passive wrongdoing."
On the other hand, the views expressed on this subject by the Missouri courts are both logical and compelling. For one thing, they draw a reasonable distinction between those instances in which the plaintiff is, through inattentiveness, oblivious to his own peril and those cases in which he is aware of his peril but negligently fails to extricate himself from it. Thus, in Lotta v. Kansas City Public Service Co., 1938, 342 Mo. 743, 117 S.W.2d 296, 300, it is said:
"In the absence of obliviousness, the position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no further beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it."
In a later case, Bean v. St. Louis Public Service Co., Mo. App. 1950, 233 S.W.2d 782, the St. Louis Court of Appeals added a logical extension:
"If the ability to stop short of coming into the path of a moving vehicle is a proper limit on the zone of peril then *536 the ability to step beyond the zone is an equally logical limitation. Neither limitation would apply, however, in the absence of obliviousness. In other words, if a person conscious of an approaching vehicle stops suddenly when almost clear of it and has at the time he stops ample time and ability to reach safety by proceeding ahead he is not in a position of peril when he stops."
Other decisions of Missouri courts discuss the significance of the plaintiff's obliviousness to his own peril. As was said in Rentfrow v. Thompson, 1941, 348 Mo. 970, 156 S.W.2d 700, 704:
"It [obliviousness] becomes important only as fixing the exact limits of the zone of peril and extending such zone along the actual path of defendant's approaching vehicle."
Later Missouri cases explained more fully the effect of obliviousness. Thus, in Harrington v. Thompson, Mo. 1951, 243 S.W.2d 519, 525:
"Just when one * * * comes into and is in a position of imminent peril is a question for the jury to determine. * * * Thus, in any humanitarian case wherein obliviousness is relied upon to create a position of imminent peril, beginning an indeterminate distance from the path of a moving instrumentality, and wherein there is evidence from which a jury may reasonably find that at some place during an approach to the path of the moving vehicle a plaintiff came into and was in a position of imminent peril, the particular place where, and time when, he did come into and was in such a position, is for the jury to determine."
Another helpful statement is contained in the opinion in State ex rel. Rosanbalm v. Shain, 1941, 349 Mo. 27, 159 S.W.2d 582, 586:
"This fact of obliviousness in and of itself can place a plaintiff in a position of peril. In other words, under the cited decisions, if a plaintiff is approaching the pathway of the defendant on a course which, unless he stops, will produce a collision and if he is at the time oblivious to the presence and approach of the defendant, this in itself will cause him to be in a position of peril and not merely approaching a position of peril. * *
"But * * * it is not sufficient to show that the plaintiff was in a position of peril; it is necessary in addition to show that such peril could have been discovered by the defendant had he exercised the required degree of care."
Of course, the statement contained in the last paragraph would apply under any view of last clear chance. Although the plaintiff may be in a position of peril, unless there is something in his situation to put defendant on notice as to his peril, the rule will not apply.
After the Second District Court's decision in this case, the Third District Court rendered its decision in Thornton v. Fishbein, Fla.App. 1966, 185 So.2d 774, in which it relied upon State ex rel. Rosanbalm v. Shain, supra, in holding that a plaintiff may already be in a position of peril even though not directly in the path of the defendant's vehicle. The decision of the Third District Court in Thornton seems to me to be in direct conflict with the Second District Court's decision in the instant case on the issue of when one is in a position of peril.
I believe that the definition of "position of peril" that is contained in the decisions of the Missouri courts just examined and in the Third District Court's opinion in the Thornton case is more logical and useful than that applied herein by the court below. I would therefore adopt the definition for future use in Florida courts.
Applying the foregoing to the instant case I agree that the trial judge properly refused to give a charge on last clear chance. The facts of this case place it in *537 either Category Three or Four. If considered as a Category Three case, in which the defendant's capacity to avoid the injury is considered as of the time he actually saw the plaintiff in a position of peril, it is clear that one of the fixed prerequisites for application of the last clear chance doctrine is missing. The doctrine never applies unless the defendant had an opportunity to avoid the injury and negligently failed to do so. The record shows that after defendant saw plaintiff he did all that could reasonably be expected of him to avoid injuring plaintiff. It is true that a jury might have found that the defendant was negligent in not having seen plaintiff sooner than he did, i.e., he was guilty of negligent inattention. However, the record shows that plaintiff's negligent inattention continued to the moment of impact. This would place the case under Category Four, one of mutual inattentiveness, and the instruction would still have been inappropriate.
I close with one last observation, which is solely my view and is not agreed to by Justice Roberts who concurs in the remainder of this opinion. Athough I have stated herein that the last clear chance doctrine is intended to mitigate the harshness of the rule of contributory negligence, I do not suggest that it does so adequately or that it produces a just result. The real fact is that the contributory negligence rule and the doctrine of last clear chance are both equally primitive devices for achieving justice as between parties who are both at fault. All either does is to place the burden of an accident on one of the parties in the face of evidence that both are to blame.
A better way to achieve justice in such cases is by the comparative negligence principle. See Maloney, 11 Univ. of Fla. L.Rev. 135 (1958); Prosser, 51 Mich.L. Rev. 465 (1953); Institute of Judicial Administration, Comparative Negligence (1955). It has been suggested that one function of the last clear chance doctrine is to get cases to the jury that would otherwise end in directed verdicts for the defendants, thereby permitting the juries, in violation of their duty to apply comparative negligence principles in handing down compromise verdicts. If this is one of its practical functions, and it might well be, the doctrine ought to be abandoned in favor of a rule which can be forthrightly used by juries.
After nearly three-quarters of a century of urging, see opinion by Chief Justice McWhorter in Louisville & N. Railroad Co. v. Yniestra, 1886, 21 Fla. 700, it is time for Florida to face this problem squarely. Our legislature has attempted to do so at least once. Both houses of the 1943 Legislature passed a comparative negligence statute, S.B. 267. However, the bill was vetoed by the governor, and the legislature refused to override the veto. See Senate Journal, Regular Session, 1943, pp. 716-717. A comparative negligence statute, with appropriate safeguards for the interest of the parties in the form of mandatory special verdict procedures, would improve the degree to which justice is obtainable in negligence cases in which both parties are at fault.
As exhausting as this opinion has been to prepare, and will be to read, it will be worthwhile if it serves to focus the attention of the bar, the bench, and the legislature on this problem and bring about action to eradicate "one of the worst tangles known to the law."
ROBERTS, J., concurs.
DREW, Justice (dissenting):
The decision of the district court in this case, 165 So.2d 784, does in my opinion conflict with that in James v. Keene, Fla. 1961, 133 So.2d 297, and Parker v. Perfection Coop. Dairies, Fla.App. 1958, 102 So.2d 645, 647. I believe those cases correctly state the applicable Florida law and require, upon the facts appearing in the opinion below, an instruction on the doctrine of *538 last clear chance in compliance with the principles cited, to determine whether the defendant "in the exercise of ordinary prudence ought to have become aware * * * that the party in peril either reasonably cannot escape from it, or apparently will not" do so. James v. Keene, supra, 133 So.2d p. 299. The decision and reasoning of the latter opinion clearly negate the conclusion in this case that "it does not appear that the plaintiff was in a position of peril when the defendant saw her." 165 So.2d 784, 786. I would quash the decision below and remand with directions for further proceedings in accordance therewith.

ON PETITION FOR REHEARING
PER CURIAM.
The petitioners, Martin J. Connolly, individually, and Martin J. Connolly, as Administrator of the Estate of Catherine E. Connolly, have filed petition for rehearing; and upon consideration thereof, it is ordered that said petition be and the same is hereby denied.
THORNAL, C.J., ROBERTS and O'CONNELL, JJ., and McCORD, Circuit Judge, concur.
BARNS, J., (Retired) concurs with opinion.
DREW, J., dissents.
BARNS, Justice (Retired), (specially concurring).
Petitioners, the Connollys, seek review of the decision of the District Court of Appeal in Connolly v. Steakley, Fla.App., 165 So.2d 784, on conflict of that decision with James v. Keene, Fla., 133 So.2d 297, and other cases. The principle of law involved is vel non the application of the law of last clear chance and whether the trial court erred in not charging the jury on the law of last clear chance as applicable to the defendant.
The District Court, in affirming the trial judge, held:
"* * * Thus it does not appear that the plaintiff was in a position of peril when the defendant saw her. She came into a position of peril thereafter by continuing to walk with inattention, thus her negligence continued up to the time of the collision. The plaintiff never saw the car until she was struck. She could have gotten herself out of the dangerous situation if she had been careful.

The trial court was entirely correct in refusing to give an instruction on the doctrine of last clear chance in this case. Yousko v. Vogt, Fla. 1953, 63 So.2d 193." [Emphasis added]
The District Court in the case sub judice based its holding that it was not error to deny the plaintiff's requested charge on the last clear chance rule upon Yousko v. Vogt, Fla., 1953, 63 So.2d 193. In each case, the plaintiff's negligence was active and concurrent with that of the defendant and in neither case is it shown that the defendant failed to exercise reasonable care not to injure the plaintiff. As stated in Yousko v. Vogt, supra, a charge to the jury on the last clear chance doctrine should not be given unless clearly applicable and it is not applicable when the negligence of the injured and the injuring party are active and concurrent in producing the injury complained of and each constitutes an immediate and direct proximate cause of the injury. As stated in Yousko v. Vogt, supra, in reviewing the trial judge's refusal to give a requested charge to the jury on the law of last clear chance, the court stated:
"* * * Although this requested charge is copied almost verbatim from our opinion in the case of Merchants Transportation Company v. Daniel, 109 Fla. 496, 149 So. 401, 404, it was not a proper charge to be given in this case *539 because the evidence shows that the negligence of each party litigant was concurrent. In such a situation the doctrine of `last clear chance' is not applicable. * * * In this case it is obvious that neither party had the last `clear opportunity of avoiding' the accident. * * *"
The rule of law expressed in Merchants Transportation Co. v. Daniels, 109 Fla. 496, 149 So. 401, seems compatible with Restatement, Torts, Second, §§ 479 and 480, viz:
"§ 479. Last Clear Chance: Helpless Plaintiff

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if immediately preceding the harm
(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and
(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he
(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or
(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise."
"§ 480. Last Clear Chance: Inattentive Plaintiff

"A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant
(a) knows of the plaintiff's situation and
(b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and
(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm."
As stated in the Comment on § 479 (b) (i), the defendant is liable "if he fails to exercise reasonable care to avoid inflicting harm upon the negligent plaintiff after he knows or has reason to know of plaintiff's position and realizes that the plaintiff is thereby put in danger." It also states that the realization of plaintiff's danger is not necessary to the defendant's liability if he knows or has reason to know plaintiff's position and as a reasonable man should realize that he is in danger. Comment (d) on Clause (b), Restatement Second, Torts, § 479, p. 532.
What the defendant "could" have known about the plaintiff's position is not the test. In order that the plaintiff may have the benefit of the avoidance of his own negligence because of the defendant's last clear chance, it is necessary that the defendant know, or should have known, of the plaintiff's position in sufficient time to enable the defendant to have avoided harm to the plaintiff by the exercise of reasonable care. Cf. Restatement, Second, Torts, § 479, Comments.
In James v. Keene, Fla., 133 So.2d 297, this court, in quashing the decision of the District Court, found from the record that:
"* * * It can be said from the evidence that the plaintiff Mrs. James had placed herself in a position of peril. From the evidence also we think a jury would have been justified in concluding that the defendant driver, in the exercise of ordinary care, ought to have become aware of the plaintiff's predicament. * * *"
The Court's use of the phrase "ought to have" means the same as "should have", as used in the preceding paragraph, supra. Whether the actor "could have" discovered *540 the plaintiff's position is only material as to a question of fact as to whether he "should have known" of plaintiff's peril.
James v. Keene, supra, further states:
"* * * There can be no doubt that Mrs. James was guilty of negligence in proceeding across the thoroughfare. Contributory negligence is always an essential precedent to the application of the last clear chance rule. We here simply hold that the factual situation presented a question for the jury pursuant to an appropriate instruction by the trial judge [on the last clear chance]."
The foregoing holding was not intended to liberalize the principles of Merchants Transportation Co. v. Daniels, 109 Fla. 496, 149 So. 401, but was intended to have application as stated in Restatement, Second, Torts, § 478, viz:
"§ 478. Time of Plaintiff's Negligence in Relation to That of Defendant.

"Except where the defendant has the last clear chance, the plaintiff's contributory negligence bars his recovery, whether it is antecedent or subsequent to that of the defendant, or simultaneous with it."
A person is required by law to use reasonable care and precautions for his own safety and to avoid injury to himself; likewise a person is required by law to use reasonable care and precautions to avoid injury or harm to others. The care and precautions in each instance is that ordinarily used by a reasonable and prudent man for his own protection and for the protection of others against him.
Contributory Negligence, Defined. Contributory negligence is conduct on the part of the plaintiff who fails to exercise that care and caution for his own protection that a reasonable prudent man would use under like circumstances, when the want of such care and caution is a substantial factor and contributing cause co-operating concurrently with the negligence of the defendant in bringing about the plaintiff's harm. Cf. Restatement, Second, Torts, §§ 463-466.
The facts recited in the decision in the case sub judice clearly show contributory negligence on the part of the plaintiff. The language of the plaintiff's requested charge on the last clear chance is not before us, and there is no showing that the defendant failed to exercise reasonable care to avoid injury to the plaintiff after her peril was known or ought to have been known.