CROSS, Judge
(dissenting).
I am impelled to dissent from the majority opinion. It is my conviction that the trial court judge was eminently correct in declining to instruct the jury concerning the doctrine of “last clear chance.”
This determination of the trial court was bottomed upon the following reasoning:
“THE COURT: I am going to deny the request of Last Clear Chance and I think that is probably the closest ruling in the case, but it is on this thinking, and I will explain it to you. I don’t think that the Jury could find that at the point where the Plaintiff came into peril, a position of peril, that it was possible to have stopped the train, and I don’t think under any reasonable inference, even from the testimony, that this could be found.”
The facts in the case reveal that before the accident the truck which plaintiff was driving had been loaded with sand and gravel from gondola cars located on defendant’s siding or spur track east of and paralleling the defendant’s north and southbound tracks. After loading, plaintiff proceeded south, paralleling the tracks at a speed of three to five miles per hour. At the intersection of Wickham Road plaintiff then turned west, crossed over the spur line, over the middle or northbound line, and while attempting to cross the westernmost or south main line upon which the train was traveling, the accident occurred.
Employees of the railroad company testified that they had seen the plaintiff’s truck, at least from the moment it pulled away from the spur track, and kept it in view during the entire trip, which lasted approximately thirty seconds. At the time the employees of the railroad company first saw the plaintiff, he was over 2,000 feet away from the position of the train. The engineer did not apply his brakes until the plaintiff “fouled” the southbound main line. At this time the railroad train was between 350 to 450 feet away from the point where the plaintiff’s truck came onto the southbound main line.
The majority opinion would have the trial court instruct concerning the last clear chance doctrine on the basis that a jury could have found that it was not necessary to stop the train in order to prevent the collision, but rather that it was only necessary to sooner reduce the speed of the train in order to avoid the accident. I question the logic in this determination. It is unrealistic, speculative, uncertain and deals in the realm of possibilities. In the in *53 stant case, when should the railroad train have slowed down its forward movement? When it saw Sanders start his truck from behind defendant’s cars located on the spur track, the easternmost of the three tracks referred to ? Or when Sanders had crossed', the middle track? Or when he was approaching the westernmost of the three tracks situated at the crossing?
In a prior decision, James v. Keene, Fla.1961, 133 So.2d 297, the Supreme Court determined that certain elements must be present to trigger the applicability of the last clear chance doctrine. These elements are:
(1) That the injured party has already come into a position of peril;
(2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact, but also that the party in peril either reasonably cannot escape from it, or apparently will not avail himself of opportunities open to him for doing' so;
(3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and
(4) that he fails to exercise such care.
It is, of course, necessary that all these factors be present in order for the doctrine of last clear chance to apply. Carl v. Shick, Fla.App.1967, 199 So.2d 283.
Two questions must be determined in the instant case:
One, under the factual circumstances herein, when was the plaintiff in a position of peril?
Two, did the defendant have a capability under the existing circumstances to avoid inflicting the injury ?
In Connolly v. Steakley, Fla.1967, 197 So.2d 524, Justice O’Connell in a concurring opinion would have us adopt for future use the definition of “position of peril” as contained in various decisions of the Missouri Courts cited therein, and the definition rendered in the decision in Thornton v. Fishbein, Fla.App.1966, 185 So.2d 774, in which our sister court of the third district held that a plaintiff may already be in a position of peril even though not directly in the path of the defendant’s vehicle. It is obvious that this definition applies to automobile accident cases only wherein, through the mobility of the vehicle itself, the zone of peril is extended beyond the zone in which the actual path of the vehicle lies.
The zone of mobility of a railroad train, of course, is much more limited. It travels in a designated, fixed area upon the tracks provided for its use. One might be in a position quite close to those tracks yet be in no position of peril. Under the factual circumstances in the instant case, the plaintiff was not in a position of peril until he reachéd that point of close proximity with the railroad tracks whereby a passing train might strike him.
The majority viewpoint would cast an unconscionable burden upon the railroad company to slow down its train whenever a slow-moving vehicle is in the vicinity of its line, notwithstanding the fact that that vehicle has not arrived in a position of peril, nor that there were any circumstances to reveal to the defendant’s employees that the plaintiff, driving at a speed of from three to five miles per hour with his vehicle under apparent control, was on a path that would place him irrevocably in a position of peril. Such, in my opinion, would cast a death blow upon a form of transportation and industry which plays a vital part in our everyday lives.
I am of the firm conviction in the instant case that up to the point that the plaintiff came into a position of peril, it would be reasonable for the defendant’s employees to assume that the plaintiff would instinctively obey the law of self-preservation and would not go upon the southbound track, and therefore no duty arose upon the de *54 fendant’s engineer to slow down his tram or make any affirmative movement to stop the forward thrust of the train until he was or should have been aware that the plaintiff was in fact in peril, i. e., under these factual circumstances, when the plaintiff “fouled” the southbound main line. Evidence revealed that defendant’s engineer took affirmative action as soon as this fact occurred; he immediately applied his brakes. However, at this time the train was between 350 to 450 feet away from the position of the truck which the plaintiff was driving, and there was not sufficient distance for the defendant’s engineer to have stopped the train to avoid the collision.
Thus, I am of the opinion that a necessary factor (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm, is completely lacking in this case. Since all the necessary factors of the last clear chance are not present, the trial court was correct in refusing to instruct the jury on the doctrine.
For the foregoing reasons, I would affirm the judgment of the lower court.