272 So.2d 529 (1973)
Hazel J. JONES, As Administratrix of the Estate of William Harrison Jones, Jr., Deceased, Appellant,
v.
Philip Francis HOFFMAN, Jr., and Pav-a-Way Corporation, a Florida Corporation, Appellees.
Hazel J. JONES, Appellant,
v.
Philip Francis HOFFMAN, Jr., and Pav-a-Way Corporation, a Florida Corporation, Appellees.
Nos. 71-553, 71-554.
District Court of Appeal of Florida, Fourth District.
February 8, 1973.
Rehearing Denied February 22, 1973.
Sammy Cacciatore, of the Law Offices of Nance & Cacciatore, Melbourne, for appellants.
Edna Louise Caruso, of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for appellees.
MAGER, Judge.
In this appeal the plaintiff has urged this court to reject the doctrine of contributory negligence in favor of a system of comparative negligence. Insofar as the disposition of this proposition is concerned a full recitation of the facts in the case sub judice is not material. Briefly, the actions arose out of a car-truck collision resulting in the death of William Harrison Jones, Jr. One suit was a wrongful death *530 action maintained by the plaintiff, in her individual capacity as widow; the other suit was maintained by plaintiff as administratrix of the Jones estate. Essentially, plaintiff alleged that the defendant Hoffman was negligent in operating a truck owned by defendant Pav-A-Way Corporation. Defendants filed a general denial and asserted the defense of contributory negligence. The court consolidated both lawsuits. The trial judge denied the plaintiff's requested instruction predicated upon comparative negligence of the parties and the jury returned a verdict in favor of the defendants.
The common law doctrine of contributory negligence which we are urged to reject provides in essence that there can be no recovery of damages for injuries negligently inflicted on one person by another if the injured person by his own negligence proximately contributed to the injury. Essentially this places upon one party the entire burden of the loss for which the two may be responsible; even where a defendant is 99 per cent negligent and a plaintiff 1 per cent negligent the defendant is relieved of all liability.
Under a comparative negligence system the relative degree of negligence of the parties is involved in determining whether, and the degree to which, either should be held liable; so that the plaintiff's negligence serves not to relieve the defendant entirely from liability but merely to diminish the damages recoverable.
Perhaps no rule of the common law has been more widely accepted and criticized than the general rule of contributory negligence. Annotation  The Doctrine of Comparative Negligence and Its Relation to the Doctrine of Contributory Negligence, 32 ALR3d 463-495; Maloney, "From Contributory to Comparative Negligence: A Needed Law Reform", 11 U. of Fla.L.R. 135.[1]
Beginning with the 1886 decision in L. & N. Railroad Co. v. Yniestra, 21 Fla. 700, 737, the doctrine of contributory negligence was enunciated and denunciated in Florida. In that case, Chief Justice McWhorter, speaking for the Supreme Court observed:
"I feel constrained to say in conclusion that in my opinion, and speaking for myself individually, the operation of the principle of contributory negligence is unjust and inequitable. ...
"Various reasons have been given by judges and commentators in justification of this, to my mind, narrow rule  that it is required by the public policy, that the injury was of the plaintiff's own producing, and that the `law has no scales to determine in such cases whose wrong doing weighed most in the compound that occasioned the mischief.' In another branch of jurisprudence these reasons have not been found potent, its `scales' seem better adjusted, and from the same premises of both plaintiff and defendant being in fault is drawn the more rational conclusion that the damages must be equally apportioned between them. This rule in admiralty courts has so commended itself that by act of Parliament, (36 and 37 Victoria) it is made the rule of the other courts in like case, where it used not to be. The law, in cases at least where human life is concerned, certainly needs legislative revision." (Emphasis added.)
Some eighty years later, Mr. Justice O'Connell similarly observed in Connolly v. Steakley, Fla. 1967, 197 So.2d 524, 537:
"I close with one last observation, which is solely my view and is not *531 agreed to by Justice Roberts who concurs in the remainder of this opinion. Although I have stated herein that the last clear chance doctrine is intended to mitigate the harshness of the rule of contributory negligence, I do not suggest that it does so adequately or that it produces a just result. The real fact is that the contributory negligence rule and the doctrine of last clear chance are both equally primitive devices for achieving justice as between parties who are both at fault. All either does is to place the burden of an accident on one of the parties in the face of evidence that both are to blame.
"A better way to achieve justice in such cases is by the comparative negligence principle. See Maloney, 11 Univ. of Fla.L.Rev. 135 (1958); Prosser, 51 Mich.L.Rev. 465 (1953); Institute of Judicial Administration, Comparative Negligence (1955). It has been suggested that one function of the last clear chance doctrine is to get cases to the jury that would otherwise end in directed verdicts for the defendants, thereby permitting the juries, in violation of their duty to apply comparative negligence principles in handing down compromise verdicts. If this is one of its practical functions, and it might well be, the doctrine ought to be abandoned in favor of a rule which can be forthrightly used by juries.
"After nearly three-quarters of a century of urging, see opinion by Chief Justice McWhorter in Louisville & N. Railroad Co. v. Yniestra, 1886, 21 Fla. 700, it is time for Florida to face this problem squarely. Our legislature has attempted to do so at least once. Both houses of the 1943 Legislature passed a comparative negligence statute, S.B. 267. However, the bill was vetoed by the governor, and the legislature refused to override the veto. See Senate Journal, Regular Session, 1943, pp. 716-717. A comparative negligence statute, with appropriate safeguards for the interest of the parties in the form of mandatory special verdict procedures, would improve the degree to which justice is obtainable in negligence cases in which both parties are at fault.
"As exhausting as this opinion has been to prepare, and will be to read, it will be worthwhile if it serves to focus the attention of the bar, the bench, and the legislature on this problem and bring about action to eradicate `one of the worst tangles known to law'."[2] (Emphasis added.)
The doctrine of contributory negligence is a judicially created principle having originated in England in the 1809 case of Butterfield v. Forrester, 11 E. 60, 103 Eng.Rep. 926 (K.B. 1809).[3] Virtually the *532 whole of tort law has been the product of judicial action. Therefore, any modification of the doctrine of contributory negligence is within this judicial pattern and framework. As one writer observed:
"... What the courts themselves have wrought to meet one set of circumstances, they may presumably undo or modify, when circumstances or prevailing values change, without treading on the toes of the legislature." Comparative v. Contributory Negligence: Should the Court or Legislature Decide? 21 Vanderbilt L.R. 889.
But see Maki v. Frelk, Ill. 1968, 40 Ill.2d 193, 239 N.E.2d 445, Justice Ward dissenting.
In this vein, the Supreme Court of Florida aptly observed in Gates v. Foley, Fla. 1971, 247 So.2d 40, 43:
"The law is not static. It must keep pace with changes in our society, for the doctrine of stare decisis is not an iron mold which can never be changed. Holmes, in his The Common Law (1881), p. 5, recognizes this in the following language:
`The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the customs, belief, or necessity disappear, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and centers on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received.'
"It may be argued that any change in this rule should come from the Legislature. No recitation of authority is needed to indicate that this Court has not been backward in overturning unsound precedent in the area of tort law. Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule." (Emphasis added.)
See also Steinhauer v. Steinhauer, Fla.App. 1971, 252 So.2d 825; Stewart v. Gilliam, Fourth District Court of Appeal, 271 So.2d 466, opinion filed December 12, 1972.
The doctrine of contributory negligence, paraphrasing the words of Mr. Justice O'Connell, is a primitive device for achieving justice between parties who are both at fault. Connolly v. Steakley, supra. We think that the time has come to reject the doctrine of contributory negligence as being "at variance with modern-day needs and concepts of justice and fair dealing". See Stewart v. Gilliam, supra. As this Court observed:
"`* * * If it is argued * * * that stare decisis compels us to perpetuate a rule  out of tune with the life around us, at variance with modern-day needs and concepts of justice and fair dealing  a ready answer is at hand. The rule of stare decisis was intended not to effect a petrifying rigidity, but to assure the justice that flows from certainty and stability. If, instead, adherence to precedent offers not justice but unfairness, not certainty but doubt and confusion, it loses its right to survive and no principle constrains us to follow it.'" Stewart v. Gilliam, supra.
The beauty of our judicial system is its flexibility in the pursuit of justice  its adherence to precedent yet its ability to re-evaluate the continued vibrancy of such precedent. It is certainly more forthright to review and reject an unsound principle than to resort to judicial exceptions in order to obviate the harshness of such principle.
*533 So, too, must we recognize that our jury system is capable of keeping pace with any such change. As a pragmatic observation juries have often "balanced" the negligence of the parties to arrive at a fair and equitable result.[4] To now suggest that a jury is incapable of operating within the framework of a comparative negligence principle overlooks reality and seems to say very little for the jury system.[5] Evidently our jury system has been able to cope with a determination of the amount of damages for pain and suffering with no fixed rule or standard for such measurement except the experience and good sense of the jurors.
With the advent of no fault automobile insurance in Florida whereby benefits are provided for bodily injury and property damage liability "without regard to fault" we would perceive no logical and just reason for the perpetuation of a principle which would preclude recovery because of some fault.
We therefore decide that contributory negligence should not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, but any damages allowed shall be diminished in proportion (percentage) to the amount of the negligence attributable to the person bringing such action or on behalf of whom such action is maintained.[6] See 32 ALR3d, supra, p. 472; 21 Vanderbilt L.Rev., supra, p. 911.
Accordingly, the judgment of the trial court is reversed with directions to grant a new trial in accordance with this opinion.
We further conclude that because of the state-wide implications of the principle which we are here enunciating we deem it appropriate to certify this decision to the Supreme Court as one involving a question of great public interest, such question being:
Whether or not the Court should replace the contributory negligence rule with the principle of comparative negligence?
MORROW, RUSSELL O., Associate Judge, concurs.
OWEN, J., dissents with opinion.
OWEN, Judge (dissenting):
I concur with the view that the doctrine of contributory negligence is fully deserving of the criticism leveled toward it, that replacing the doctrine with the principle of comparative negligence would in most cases reach a more equitable result, and that such a change can be accomplished by the judicial branch of government in view of the fact that the doctrine of contributory negligence was judicially created.
*534 My disagreement with the majority lies simply in the fact that if and when such a change is to be wrought by the judiciary, it should be at the hands of the Supreme Court rather than the District Court of Appeal. The doctrine of contributory negligence is firmly entrenched in our jurisprudence, having been re-affirmed many times by the Supreme Court and by the several District Courts of Appeal. The majority decision would appear to flatly overrule a multitude of prior decisions of our Supreme Court, a prerogative which we do not enjoy.
I think the trial court correctly denied the requested instruction on comparative negligence, and this being the only ground of error asserted on appeal, the judgment should be affirmed. If affirmed, the question upon which the decision passes could be certified, thus affording the Supreme Court the opportunity to re-examine its position on contributory negligence vis-a-vis comparative negligence.
NOTES
[1] "It is generally recognized that contributory negligence as a complete bar to recovery has denied justice to more injured persons than any other legal concept." The Two-Layer Cake: No Fault and Comparative Negligence, ABA Journal, Vol. 58, pp. 933-6, September 1972.
[2] At one time Florida had a comparative negligence statute relating solely to railroad accident cases. The statute, which was adopted in 1887, was declared unconstitutional under the due process and equal protection clauses of the state and federal constitutions primarily because the application of the statute was limited to railroad accident cases. Georgia Southern & Florida Ry. Co. v. Seven-Up Bott. Co., Fla. 1965, 175 So.2d 39. Comparative negligence proposals have been considered by the legislature from time to time without success. The decision in Connolly v. Steakley, supra, reflects what transpired in 1943. We note somewhat sombrely that two bills were introduced in the 1972 legislative session: Senate Bill 691 died in committee; House Bill 4264 failed to pass. In 1971, four bills suffered similar fate (Senate Bills 254 and 294; and House Bills 548 and 2131). Cf. Dade County Classroom Teachers Ass'n, Inc. v. Legislature of the State of Fla., Supreme Court of Florida, 269 So.2d 684, opinion filed November 8, 1972. The prospect for legislative action appears to be bleak.
[3] The United States is virtually the last stronghold of contributory negligence, the doctrine as a complete defense having disappeared from the law in England, continental Europe, the Canadian provinces, New Zealand and western Australia. 32 A.L.R.3d, supra, p. 469. See also dissenting opinion in Maki v. Frelk, 1968, 40 Ill.2d 193, 239 N.E.2d 445. In maritime cases contributory negligence is not an absolute defense. 29A Fla.Jur. Ships and Shipping § 10.
[4] ABA Journal, Vol. 58, pp. 933-4, September 1972 "The Two-Layer Cake: No Fault and Comparative Negligence".
[5] We see no reason why a jury operating under court supervision cannot fix the aggregate damages and the aggregate percentage of fault. ABA Journal, Vol. 58, pp. 933-4, supra; see also 32 A.L.R.3d, supra, p. 492.
[6] This particular "form" of comparative negligence has been referred to as "the pure form"; it is similar to former Section 768.06, F.S.A., the comparative negligence statute relating to railroads, and is essentially the form presently applicable to admiralty cases. See footnotes 2 and 3, infra. For a discussion of various forms of comparative negligence, see 32 A.L.R.3d pp. 473-478. In addition to the foregoing there is considerable merit to another form of recovery under the concept of "apportionment of damages" whereby a plaintiff's negligence would not bar a recovery, however, a plaintiff could recover only to the extent that the defendant's percentage of negligence exceeded plaintiff's percentage of negligence, i.e., if a plaintiff were 49% negligent and a defendant were 51% negligent plaintiff's recovery would be 2 per cent of the damages suffered; if plaintiff was guilty of 50 per cent or more of the negligence he would recover nothing.