280 So.2d 431 (1973)
Philip Francis HOFFMAN, Jr., and Pav-a-Way Corporation, a Florida Corporation, Petitioners,
v.
Hazel J. JONES, As Administratrix of the Estate of William Harrison Jones, Jr., Deceased, Respondent.
No. 43443.
Supreme Court of Florida.
July 10, 1973.
*433 Edna L. Caruso of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for petitioners.
Sammy Cacciatore of Nance & Cacciatore, Melbourne, for respondent.
E. Harper Field and Frank C. Amatea of Keen, O'Kelley & Spitz, Tallahassee, for amicus curiae, Fla. Defense Lawyers Ass'n.
C. Graham Carothers and C. DuBose Ausley of Ausley, Ausley, McMullen, McGehee & Carothers, Tallahassee, for amicus curiae, Fla. Railroad Ass'n.
Kenneth L. Ryskamp, of Bolles, Goodwin, Ryskamp & Welcher, Miami, for amicus curiae, Fla. East Coast Railway Co.
William B. Killian, of McCarthy, Steel, Hector & Davis, Miami, for amicus curiae, Fla. Power & Light Co.
Sam H. Mann, Jr. and John T. Allen, Jr., of Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for amicus curiae, Fla. Power Corp.
Raymond Ehrlich and James E. Cobb, Jacksonville, for amicus curiae, American Mutual Ins. Alliance, American Ins. Asso., and National Asso. of Independent Insurers.
Thomas W. McAliley of Beckham & McAliley, Miami, for amicus curiae, United Transportation Union, Fla. Legislative Boards of Railroad Brotherhoods and the Fla. AFL-CIO.
ADKINS, Justice.
This cause is here on petition for writ of certiorari supported by certificate of the District Court of Appeal, Fourth District, that its decision (Jones v. Hoffman, 272 So.2d 529) is one which involves a question of great public interest. See Fla. Const., art. V, § 3(b) (3), F.S.A.
The question certified by the District Court of Appeal is:
"Whether or not the Court should replace the contributory negligence rule with the principles of comparative negligence?"
The District Court of Appeal answered the certified question in the affirmative and reversed the trial court in the case sub judice for following the precedent set down by this Court in Louisville and Nashville Railroad Co. v. Yniestra, 21 Fla. 700 (1886). This early case specifically held the contributory negligence rule to be the law of Florida, and it has uniformly been followed by the courts of the State ever since. The District Court of Appeal attempted, therefore, to overrule all precedent of this Court in the area of contributory negligence and to establish comparative negligence as the proper test. In so doing, the District Court has exceeded its authority.
In a dissenting opinion, Judge Owen stated well the position of the District Courts of Appeal when in disagreement *434 with controlling precedent set down by this Court:
"[I]f and when such a change is to be wrought by the judiciary, it should be at the hands of the Supreme Court rather than the District Court of Appeal... . The majority decision would appear to flatly overrule a multitude of prior decisions of our Supreme Court, a prerogative which we do not enjoy." Jones v. Hoffman, 272 So.2d 529, p. 534.
The other District Courts of Appeal have recognized the relationship between their authority and that of this Court. Griffin v. State, 202 So.2d 602 (Fla.App. 1st, 1967); Roberts v. State, 199 So.2d 340 (Fla.App.2d, 1967); and United States v. State, 179 So.2d 890 (Fla.App.3d, 1965). To allow a District Court of Appeal to overrule controlling precedent of this Court would be to create chaos and uncertainty in the judicial forum, particularly at the trial level. Ever since the District Court rendered its opinion there has been great confusion and much delay in the trial courts of the District Court of Appeal, Fourth District, while the attorneys and judges alike have been awaiting our decision in this case.
We point out that the mere certification to this Court by a District Court of Appeal that its decision involves a question of great public interest does not vest this Court with jurisdiction. If neither party involved petitioned here for a writ of certiorari, we would not have jurisdiction to answer the question certified or to review the District Court's action.
This is not to say that the District Courts of Appeal are powerless to seek change; they are free to certify questions of great public interest to this Court for consideration, and even to state their reasons for advocating change. They are, however, bound to follow the case law set forth by this Court.
Prior to answering the question certified, we must also consider our own power and authority to replace the rule of contributory negligence with that of comparative negligence. It has been suggested that such a change in the common law of Florida is properly within the province only of the Legislature, and not of the courts. We cannot agree.
The rule that contributory negligence is an absolute bar to recovery was  as most tort law  a judicial creation, and it was specifically judicially adopted in Florida in Louisville and Nashville Railroad Co. v. Yniestra, supra. Most scholars attribute the origin of this rule to the English case of Butterfield v. Forrester, 11 East 60, 103 Eng.Rep. 926 (K.B. 1809), although as much as thirty years later  in Raisin v. Mitchell, 9 Car. & P. 613, 173 Eng.Rep. 979 (C.P. 1839)  contributory negligence was held not to be a complete bar to recovery. Maloney, From Contributory to Comparative Negligence: A Needed Law Reform, 11 U.Fla.L.Rev. 135, 141-142 (1958). Although "contributory negligence" itself had been mentioned in some earlier cases, our research reveals that prior to 1809 (as well as for a time after that date) there was no clear-cut, common law rule that contributory negligence was a complete defense to an action based on negligence. Most probably, the common law was the same in this regard as English maritime law and the civil law  i.e., damages were apportioned when both plaintiff and defendant were at fault. See Maloney, supra, page 152. Many authorities declare that early references to "contributory negligence" did not concern contributory negligence as we are familiar with it  i.e., lack of due care by the plaintiff which contributes to his injuries  but that it originally meant a plaintiff's own negligent act which was the effective, direct cause of the accident in which he was injured. E.G., Turk, Comparative Negligence on the March, 28 Chi-Kent L.Rev. 189, p. 196 (1950).
Prior to Butterfield v. Forrester, supra, there was no clear-cut pronouncement of the contributory negligence rule, so it must *435 be said that "judicial thinking" culminated in the implicit pronouncement of the contributory negligence rule in the 1809 decision of Butterfield v. Forrester, supra. In view of the fact that prior to Butterfield contributory negligence was a matter of judicial thought rather than judicial pronouncement, it cannot be said that the common law was "clear and free from doubt," so as to make it a part of the statute law of this State by virtue of Fla. Stat., § 2.01, F.S.A.
As we stated in Duval v. Thomas, 114 So.2d 791, 795 (Fla. 1959), it is "only when the common law is plain that we must observe it." We also said in this case,
"[W]hen grave doubt exists of a true common law doctrine ... we may, as was written in Ripley v. Ewell, supra, [61 So.2d 420], exercise a `broad discretion' taking `into account the changes in our social and economic customs and present day conceptions of right and justice.'"
Even if it be said that the present bar of contributory negligence is a part of our common law by virtue of prior judicial decision, it is also true from Duval that this Court may change the rule where great social upheaval dictates. It has been modified in many instances by judicial decision, such as those establishing the doctrines of "last clear chance," "appreciable degree" and others. See Negligence: Application of the Last Clear Chance Doctrine by Kenneth M. Myers, 8 Fla.Law Rev. 336 (1955). In a large measure the rule has been transfigured from any "statutory creation" by virtue of our adoption of the common law (if such it were) into decisional law by virtue of various court refinements. We have in the past, with hesitation, modified the common law in justified instances, and this is as it should be. Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941), modified the common law doctrine that gave a father the superior right to the custody of a child; Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932), removed the common law exemption of a married woman from causes of action based on contract or mixed contracts in tort.
In Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931), this Court refused to follow the common law principle that an action for personal injuries was abated upon the death of the tortfeasor, the Court saying:
"This court has expressly recognized the principle that in specific instances certain rules which were admittedly a part of the old English common law did not become a part of the Florida common law, because contrary to our customs, institutions, or intendments of our statutes on other subjects." (p. 784)
This Court receded from the common law and held, in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior, saying:
"Tracing the rule to its ultimate progenitor we are led to the English case of Russel v. Men of Devon, 2 T.R. 667, 100 Eng.Rep.R. 359 (1788).
......
"Assuming that the immunity rule had its inception in the Men of Devon case, and most legal historians agree that it did, it should be noted that this case was decided in 1788, some twelve years after our Declaration of Independence. Be that as it may, our own feeling is that the courts should be alive to the demands of justice. We can see no necessity for insisting on legislative action in a matter which the courts themselves originated." (Emphasis supplied) (p. 132)
Gates v. Foley, 247 So.2d 40 (Fla. 1971), established the right of a wife to recover for the loss of consortium as a result of her husband's injuries. This decision receded from Ripley v. Ewell, 61 So.2d 420 *436 (Fla. 1952) and abrogated a common law principle, saying:
"It may be argued that any change in this rule should come from the Legislature. No recitation of authority is needed to indicate that this Court has not been backward in overturning unsound precedent in the area of tort law. Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule." (Emphasis supplied) 247 So.2d 40, p. 43
All rules of the common law are designed for application to new conditions and circumstances as they may be developed by enlightened commercial and business intercourse and are intended to be vitalized by practical application in advanced society. One of the most pressing social problems facing us today is the automobile accident problem, for the bulk of tort litigation involves the dangerous instrumentality known as the automobile. Our society must be concerned with accident prevention and compensation of victims of accidents. The Legislature of Florida has made great progress in legislation geared for accident prevention. The prevention of accidents, of course, is much more satisfying than the compensation of victims, but we must recognize the problem of determining a method of securing just and adequate compensation of accident victims who have a good cause of action.
The contemporary conditions must be met with contemporary standards which are realistic and better calculated to obtain justice among all of the parties involved, based upon the circumstances applying between them at the time in question. The rule of contributory negligence as a complete bar to recovery was imported into the law by judges. Whatever may have been the historical justification for it, today it is almost universally regarded as unjust and inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss. If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.
We are, therefore, of the opinion that we do have the power and authority to reexamine the position we have taken in regard to contributory negligence and to alter the rule we have adopted previously in light of current "social and economic customs" and modern "conceptions of right and justice."
Use of the terms "contributory negligence" and "comparative negligence" is slightly confusing. The two theories now commonly known by these terms both recognize that negligence of a plaintiff may play a part in causing his injuries and that the damages he is allowed to recover should, therefore, be diminished to some extent. The "contributory negligence" theory, of course, completely bars recovery, while the "comparative negligence" theory is that a plaintiff is prevented from recovering only that proportion of his damages for which he is responsible.
The demise of the absolute-bar theory of contributory negligence has been urged by many American scholars in the law of torts. It has been abolished in almost every common law nation in the world, including England  its country of origin  and every one of the Canadian Provinces. Some form of comparative negligence now exists in Austria, France, Germany, Portugal, Switzerland, Italy, China, Japan, Persia, Poland, Russia, Siam and Turkey. Maloney, supra, page 154.
Also, our research reveals that sixteen states have so far adopted some form of the comparative negligence doctrine.
One reason for the abandonment of the contributory negligence theory is that the initial justification for establishing the *437 complete defense is no longer valid. It is generally accepted that, historically, contributory negligence was adopted "to protect the essential growth of industries, particularly transportation." Institute of Judicial Administration, Comparative Negligence  1954 Supplement, at page 2. Modern economic and social customs, however, favor the individual, not industry.
We find that none of the justifications for denying any recovery to a plaintiff, who has contributed to his own injuries to any extent, has any validity in this age.
Perhaps the best argument in favor of the movement from contributory to comparative negligence is that the latter is simply a more equitable system of determining liability and a more socially desirable method of loss distribution. The injustice which occurs when a plaintiff suffers severe injuries as the result of an accident for which he is only slightly responsible, and is thereby denied any damages, is readily apparent. The rule of contributory negligence is a harsh one which either places the burden of a loss for which two are responsible upon only one party or relegates to Lady Luck the determination of the damages for which each of two negligent parties will be liable. When the negligence of more than one person contributes to the occurrence of an accident, each should pay the proportion of the total damages he has caused the other party.
In an effort to ameliorate the harshness of contributory negligence, other doctrines have evolved in tort law such as "gross, willful, and wanton" negligence, "last clear chance" and the application of absolute liability in certain instances. Those who defend the doctrine of contributory negligence argue that the rule is also not as harsh in its practical effect as it is in theory. This is so, they say, because juries tend to disregard the instructions given by the trial judge in an effort to afford some measure of rough justice to the injured party. We agree with Dean Maloney that,
"[T]here is something basically wrong with a rule of law that is so contrary to the settled convictions of the lay community that laymen will almost always refuse to enforce it, even when solemnly told to do so by a judge whose instructions they have sworn to follow... .
"[The disrespect for law engendered by putting our citizens in a position in which they feel it is necessary to deliberately violate the law is not something to be lightly brushed aside; and it comes ill from the mouths of lawyers, who as officers of the courts have sworn to uphold the law, to defend the present system by arguing that it works because jurors can be trusted to disregard that very law." 11 U.Fla.L.Rev. 135, pp. 151-152 (1958).
In Connolly v. Steakley, 197 So.2d 524, 537 (Fla. 1967), Mr. Justice O'Connell referred to contributory negligence as a "primitive device for achieving justice as between parties who are both at fault." Even Mr. Chief Justice McWhorter, in authoring the decision which specifically held the contributory negligence doctrine to be the law of this State, referred to it as "unjust and inequitable." Louisville and Nashville Railroad Co. v. Yniestra, supra, 21 Fla. p. 738.
Eighty-seven years after that decision, we find ourselves still laboring under a rule of law that has long been recognized as inequitable. The Legislature did enact a statute in 1887 which applied the principle of comparative negligence to railroad accidents. We held the statute unconstitutional under the due process and equal protection clauses of the Federal and State constitutions because it was of limited scope and not of general application. Georgia Southern & Florida Railway Co. v. Seven-Up Bottling Co., 175 So.2d 39 (Fla. 1965). Our Legislature again addressed the problem in 1943, when a comparative negligence statute of general application was passed by both houses. This *438 bill was vetoed by the Governor and the Legislature would not override the veto. Senate Journal, Regular Session, 1943, pp. 716-717. One man thus prevented this State from now operating under a much more equitable system of recovery for negligent personal injuries and property damage. Since that "defeat," the Legislature has done little to discard the harsh and inequitable contributory negligence rule, perhaps because it considers the problem to be a judicial one.
Since we definitely consider the problem to be a judicial one, we feel the time has come for this Court to join what seems to be a trend toward almost universal adoption of comparative negligence. A primary function of a court is to see that legal conflicts are equitably resolved. In the field of tort law, the most equitable result that can ever be reached by a court is the equation of liability with fault. Comparative negligence does this more completely than contributory negligence, and we would be shirking our duty if we did not adopt the better doctrine.
Therefore, we now hold that a plaintiff in an action based on negligence will no longer be denied any recovery because of his contributory negligence.
If it appears from the evidence that both plaintiff and defendant were guilty of negligence which was, in some degree, a legal cause of the injury to the plaintiff, this does not defeat the plaintiff's recovery entirely. The jury in assessing damages would in that event award to the plaintiff such damages as in the jury's judgment the negligence of the defendant caused to the plaintiff. In other words, the jury should apportion the negligence of the plaintiff and the negligence of the defendant; then, in reaching the amount due the plaintiff, the jury should give the plaintiff only such an amount proportioned with his negligence and the negligence of the defendant. See Florida Cent. & P.R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338, 79 Am.St.Rep. 149 (1899).
This rule should not be construed so as to entitle a person to recover for damage in a case where the proof shows that the defendant could not by the exercise of due care have prevented the injury, or where the defendant's negligence was not a legal cause of the damage. Stated differently, there can be no apportionment of negligence where the negligence of the defendant is not directly a legal cause of the result complained of by the plaintiff. A plaintiff is barred from recovering damages for loss or injury caused by the negligence of another only when the plaintiff's negligence is the sole legal cause of the damage, or the negligence of the plaintiff and some person or persons other than the defendant or defendants was the sole legal cause of the damage.
If plaintiff and defendant are both at fault, the former may recover, but the amount of his recovery may be only such proportion of the entire damages plaintiff sustained as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant. For example, where it is found that the plaintiff's negligence is at least equal to that of the defendant, the amount awarded to the plaintiff should be reduced by one-half from what it otherwise would have been.
The doctrine of last clear chance would, of course, no longer have any application in these cases. See Martin v. Sussman, 82 So.2d 597 (Fla. 1955).
We decline herein to dissect and discuss all the possible variations of comparative negligence which have been adopted in other jurisdictions. Countless law review commentaries and treatises can be found which have covered almost every conceivable mutation of the basic doctrine. Suffice it to say that we consider the "pure form" of comparative negligence  as we have phrased it above  to be the most equitable method of allocating damages in negligence actions.
*439 In the usual situation where the negligence of the plaintiff is at issue, as well as that of the defendant, there will undoubtedly be a counterclaim filed. The cross-plaintiff (just as plaintiff in the main suit) guilty of some degree of negligence would be entitled to a verdict awarding him such damages as in the jury's judgment were proportionate with his negligence and the negligence of cross-defendant. This could result in two verdicts  one for plaintiff and one for cross-plaintiff. In such event the Court should enter one judgment in favor of the party receiving the larger verdict, the amount of which should be the difference between the two verdicts. This is in keeping with the long recognized principles of "set off" in contract litigation. The Court's primary responsibility is to enter a judgment which reflects the true intent of the jury, as expressed in its verdict or verdicts.
In rare cases the net result of two such claims will be that the party more responsible for an accident will recover more than the party less responsible. On the surface, this might seem inequitable. However, using an extreme example, let us assume that a plaintiff is 80 per cent responsible for an automobile accident and suffers $20,000 in damages, and that the defendant  20 per cent responsible  fortunately suffers no damages. The liability of the defendant in such a case should not depend upon what damages he suffered, but upon what damages he caused. If a jury found that this defendant had been negligent and that his negligence, in relation to that of the plaintiff, was 20 per cent responsible for causing the accident then he should pay 20 per cent of the total damages, regardless of the fact that he has been fortunate enough to not be damaged personally.
Petitioners in this cause, and various amicus curiae who have filed briefs, have raised many points which they claim we must consider in adopting comparative negligence, such as the effects of such a change on the concept of "assumption of risk," and no "contribution" between joint tortfeasors. We decline to consider all those issues, however, for two reasons. One reason is that we already have a body of case law in this State dealing with comparative negligence, under our earlier railroad statute. Much of this case law will be applicable under the comparative negligence rule we are now adopting generally.
The other reason is that it is not the proper function of this Court to decide unripe issues, without the benefit of adequate briefing, not involving an actual controversy, and unrelated to a specific factual situation.
We are fully confident that the trial court judges of this State can adequately handle any problems created by our change to a comparative negligence rule as these problems arise. The answers to many of the problems will be obvious in light of the purposes for which we adopt the rule stated above:
(1) To allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and
(2) To apportion the total damages resulting from the loss or injury according to the proportionate fault of each party.
In accomplishing these purposes, the trial court is authorized to require special verdicts to be returned by the jury and to enter such judgment or judgments as may truly reflect the intent of the jury as expressed in any verdict or verdicts which may be returned.
We recognize the thousands of pending negligence cases affected by this decision. In fact, the prospect of a general upheaval in pending tort litigation has always been a deterring influence in considering the adoption of a comparative negligence rule. See Annotation, The Doctrine of Comparative Negligence, 32 ALR 3d 463, p. 487. We feel the trial *440 judges of this State are capable of applying this comparative negligence rule without our setting guidelines in anticipation of expected problems. The problems are more appropriately resolved at the trial level in a practical manner instead of a theoretical solution at the appellate level. The trial judges are granted broad discretion in adopting such procedure as may accomplish the objectives and purposes expressed in this opinion.
Determining the time when the comparative negligence rule shall be applied at the trial level presents another problem. The confusion created by the premature adoption of the comparative negligence rule by the District Court of Appeal is further exemplified by the fact that some trial judges, relying on the decision, have applied the rule in the trial of many cases. Other trial judges have conducted their trials in accordance with the law of contributory negligence.
We hold that a District Court of Appeal does not have the authority to overrule a decision of the Supreme Court of Florida. In the event of a conflict between the decision of a District Court of Appeal and this Court, the decision of this Court shall prevail until overruled by a subsequent decision of this Court.
Under the circumstances, we hold that this opinion shall be applied as follows:
1. As to those cases in which the comparative negligence rule has been applied, this opinion shall be applicable.
2. As to those cases already commenced, but in which trial has not yet begun, this opinion shall be applicable.
3. As to those cases in which trial has already begun or in which verdict or judgment has already been rendered, this opinion shall not be applicable, unless the applicability of the comparative negligence rule was appropriately and properly raised during some stage of the litigation.
4. As to those cases on appeal in which the applicability of the comparative negligence rule has been properly and appropriately made a question of appellate review, this opinion shall be applicable.
5. This opinion shall be applicable to all cases commenced after the decision becomes final.
The certified question having now been answered in full, this cause is remanded to the District Court of Appeal, Fourth District, to be further remanded to the Circuit Court for a new trial.
In order to finalize the determination of the question in this case as expeditiously as possible, this decision is made effective immediately and a petition for rehearing will not be allowed.
It is so ordered.
CARLTON, C.J., and ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.
ROBERTS, J., dissents with opinion.
ROBERTS, Justice (dissenting).
I must respectfully dissent from the majority opinion in this cause. My primary concern is whether this Court is empowered to reject and replace the established doctrine of contributory negligence by judicial decree.
The sovereign powers of this State are divided into three coordinate branches of government  legislative, judicial and executive  by the Constitution of Florida, Article II, Section 3. Our Constitution specifically prohibits a person belonging to one of such branches from exercising any powers "appertaining to either of the other branches unless expressly provided herein." This Court has been diligent in preserving and maintaining the doctrine of separation of powers, which doctrine was imbedded in both the state and federal constitutions at the threshhold of constitutional democracy in this country, and under which doctrine *441 the judiciary has no power to make statutory law. State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 124 So. 279 (1929), Carlton v. Matthews, 103 Fla. 301, 137 So. 815 (1931), State v. Herndon, 158 Fla. 115, 27 So.2d 833 (1946), Hancock v. Board of Public Instruction of Charlotte County, 158 So.2d 519 (Fla. 1963), Holley v. Adams, 238 So.2d 401 (Fla. 1970), State v. Barquet, 262 So.2d 431 (Fla. 1972).
In the case of Ponder v. Graham, 4 Fla. 23, 25 (1851), this Court emphatically stated,
"The fundamental principle of every free and good government is, that these several co-ordinate departments forever remain separate and distinct. No maxim in political science is more fully recognized than this. Its necessity was recognized by the framers of our government, as one too invaluable to be surrendered, and too sacred to be tampered with. Every other political principle is subordinate to it  for it is this which gives to our system energy, vitality and stability. Montesquieu says there can be no liberty, where the judicial are not separated from the legislative powers. 1 Spirit of Laws, page 181. Mr. Madison says these departments should remain forever separate and distinct, and that there is no political truth of greater intrinsic value, and which is stamped with the authority or more enlightened patrons of liberty. Federalist, 270."
Applying this well established doctrine, we held that the matter of changing statutory law is not one to be indulged by the Court, but is a legislative function. Kennedy v. City of Daytona Beach, 132 Fla. 675, 182 So. 228 (1938). Therein, this Court also reaffirmed the principle that the common law, if not abrogated by statute or constitutional provision, is in full force and effect in this state. See also Bryan v. Landis, 106 Fla. 19, 142 So. 650 (1932), Wilson v. Renfroe, 91 So.2d 857 (Fla. 1957), Brooks v. City of West Miami, 246 So.2d 115 (Fla.App. 1971).
It is the statutory law of this state that,
"The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state." Florida Statutes, Section 2.01, F.S.A.
The doctrine of contributory negligence was a part of the common law of England prior to July 4, 1776, and therefore, is part of the common law of this state pursuant to Florida Statutes, Section 2.01, F.S.A., and is secure from the desires of this Court to supplant it by the doctrine of comparative negligence, provided that it is not inconsistent with the Constitution and laws of the United States and the Constitution and acts of the Legislature of this state. Ripley v. Ewell, 61 So.2d 420 (Fla. 1952), Duval v. Thomas, 114 So.2d 791 (Fla. 1959). Furthermore, we have held that courts are bound by the rule of stare decisis to follow common law as it has been judicially declared in previously adjudicated cases. Layne v. Tribune Co., 108 Fla. 177, 146 So. 234 (1933).
The question presently before this Court is whether this Court should replace the doctrine of contributory negligence with the concept of comparative negligence. Sub judice, by applying the doctrine of contributory negligence, the trial court correctly followed the precedent set down by this Court in Louisville and Nashville Railroad Co. v. Yniestra, 21 Fla. 700 (1886), and its progeny. This Court in Yniestra recognized and described contributory negligence as "the law as it unquestionably stands," 21 Fla. 700, p. 737. We said, "If Mr. Yniestra was himself negligent, and that negligence was the proximate cause of his death, the law calls that contributory negligence, and the plaintiff could not recover."
*442 Although the case of Butterfield v. Forrester, 11 East 60, 103 Eng.Rep. 926 (K.B. 1809), is recognized as a leading case in the area of contributory negligence, such case was not the first pronouncement of the common law doctrine of contributory negligence. Lord Ellenborough wrote in Butterfield v. Forrester, supra,
"One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff." 11 East 60, 61.
The brief opinions of Bayley, J. and Lord Ellenborough in Forrester were merely a restatement of the concept of common law contributory negligence. If this case was the origin of common law contributory negligence, then clearly it would not have been adopted as part of the statutory law of this state through Florida Statutes, Section 2.01, F.S.A., because that decision was rendered subsequent to July 4, 1776.
I note with much interest the comment by Wex S. Malone in, "The Formative Era of Contributory Negligence," 41 Illinois Law Review, 151, to the following effect:
"The concise opinions of Bayley and Lord Ellenborough in Butterfield v. Forrester (1809) afford no indication that either of those judges felt at the time that he was charting new paths for law."
Contributory negligence was adopted much earlier as a part of the common law. In Bayly v. Merrell, Cro.Jac. 386, 79 Eng. Rep. 331 (1606), the Court explicated,
"[I]f he doubted of the weight thereof, he might have weighed it; and was not bound to give credence to another's speech; and being his own negligence, he is without remedy." (Emphasis supplied) Cro.Jac. 386, p. 387, 79 Eng.Rep. 331.
Charles Beach in 1882 traced the doctrine of contributory negligence back to its origin in his treatise on contributory negligence, wherein he set out,
"Our Anglo-American law of Negligence, including, as of course, that of Contributory Negligence, has come down to us, in ordinary generation, from the civil law of imperial Rome. It is a part of that great debt which the common law owes to the classical and the scholastic jurisprudence." Beach on Contributory Negligence, § 1, p. 1 (1882). See also: Beach on Contributory Negligence, 2d Ed., § 1, p. 1 (1892), and Beach on Contributory Negligence, 3d Ed., Crawford, § 1, p. 1 (1899).
Although he expressed a personal view of dislike for the operation of the principle of contributory negligence, Chief Justice McWhorter recognized in Louisville and Nashville Railroad Co. v. Yniestra, supra, the inability of this Court to change the common law rule of contributory negligence when he applied the existing law required to the facts of the case before him. He observed,
"The law, in cases at least where human life is concerned, certainly needs legislative revision." (Emphasis supplied) 21 Fla. 700, p. 738.
By virtue of Florida Statutes, Section 2.01, contributory negligence is in force and said doctrine can be modified or replaced only by legislation to the contrary. Interposition of judicial power to make a legislative change in a statute which the Legislature on numerous occasions has refused to do is a clear invasion of the legislative.
Co-Operative Sanitary Baking Co. v. Shields, 71 Fla. 110, 70 So. 934 (1916), involved a personal injury suit wherein plaintiff sought to recover damages for injuries sustained through the alleged negligence of defendant. Therein, this Court stated, inter alia, that at common law a plaintiff could not recover for injuries to himself caused by the negligence of another *443 if he in any appreciable way contributed to the proximate cause of injury, upon the theory that there is no apportionment of the results of mutual negligence. See also German-American Lumber Co. v. Hannah, 60 Fla. 76, 53 So. 516, 30 L.R.A. (N.S.) 882. In the Shields case, this Court explicitly recited,
"The only modification of this common-law principle which the Legislature of this state has seen fit to make is in regard to injuries occasioned by railroad companies. See sections 3148, 3149, and 3150 of the General Statutes. If this common-law principle is to be still further modified, it must be done by the Legislature, as it is beyond the power and province of the courts. We would also refer to Coronet Phosphate Co. v. Jackson, 65 Fla. 170, 61 So. 318, and Wauchula Manufacturing & Timber Co. v. Jackson, 70 Fla. 596, 70 So. 599, decided here at the last term, wherein we followed the principles enunciated in German-American Lumber Co. v. Hannah, supra. If the evidence adduced in the instant case established the fact that the plaintiff's own negligence contributed to the proximate cause of the injuries which he received, then he cannot recover, even though it is also established by the evidence that the defendant was likewise guilty of negligence, whether by acts of commission or omission, which contributed to or formed a part of the proximate cause of the injury. In order to determine this point a careful examination of the evidence is requisite." (Emphasis supplied) supra, 70 So. at p. 936.
In fine, the primary question is not whether or not the law of contributory negligence should be changed, but rather, who should do the changing. Contributory negligence was recognized in the common law as far back as A.D. 1606 and made a part of the statute law of this State in A.D. 1829, and thus far not changed by statute. If such a fundamental change is to be made in the law, then such modification should be made by the legislature where proposed change will be considered by legislative committees in public hearing where the general public may have an opportunity to be heard and should not be made by judicial fiat. Such an excursion into the field of legislative jurisdiction weakens the concept of separation of powers and our tripartite system of government.
For the foregoing reasons, I respectfully dissent.