GLICKSTEIN, Judge.
Appellant, a licensed chiropractor, appeals from a final order of the Department of Professional Regulation which fined him $1,000 for allegedly deceptive advertising. We reverse.
The Department of Professional Regulation filed an administrative complaint against appellant, contending that he wrongfully placed an advertisement in a newspaper of general circulation in Palm Beach County, advertising a Natural Holistic Health Fair to be held at a shopping mall. The complaint was based upon Rule 21D-15.01(2)(g), Florida Administrative Code, which provides:
(2) No chiropractor shall disseminate or cause the dissemination of any advertisement or advertising which is any way fraudulent, false, deceptive or misleading. Any advertisement or or [sic] advertising shall be deemed by the Board to be fraudulent, false, deceptive, or misleading if it:

(g) Fails to conspicuously identify the chiropractor or chiropractors referred to in the advertising as a chiropractor or chiropractors.
The present case is a good illustration of differing value judgments. The majority consider the “advertisement” of the “Natural Holistic Health Fair” not to be the type of “advertisement!’ that the subject regulation was designed to proscribe.[1]
*1129 The basis of our value judgment[2] is primarily found in the fact that the advertisement, on its face, is for a fair, which needs no definition for this opinion. Instead of preserves and pies, health resources were to be displayed. We liken the chiropractic examinations being offered at the fair to the generic counseling being offered by lawyers on Law Day every year at shopping centers across the nation; whereas the latter involves the mind, the former involves the body.
The purpose of the subject regulation, in our view, was to prevent individual chiropractors from conducting their practices under fictitious trade names which did not identify who the practitioners were. It was not designed to preclude one branch of chiropractors from participating in a holistic fair and to advertise their participation on the Florida Chiropractic Council, nor to punish the officers thereof as being individually responsible, any more than The Florida Bar would seek to punish local bar association officers for the association’s advertisement of Law Day. The lawyer talking to the elderly shopper about wills and the chiropractor displaying some healing manipulation are not doing business under a fictitious trade name. We feel that support for our value judgment, however relative it may be, is in the language found in Friedman v. Rogers, 440 U.S. 1, 13, 99 S.Ct. 887, 896, 59 L.Ed.2d 100, 112 (1979), which describes the perils a similar proscription involving Texas optometrists was designed to prevent.[3] Those perils originate with the practice of a profession — legal or medical — without disclosure of the identity of the individual engaged in the practice. To extend the intended protection of the public to the facts of this case is, in the judgment of the majority, artificial. Let us pose a case where the council members referred invitees at the fair to an individual or group of chiropractors who were practicing under a trade name without disclosing the practitioners’ identity. In such instance, all involved in such scheme would have the same dirt on their hands. However, in the instant case there is no evidence whatsoever of such complicity, evasiveness or otherwise sinister conduct. What if, instead of free examinations, the council had shown a film, or had two chiropractors perform a subluxation which did not involve an invitee to the fair, and then referred the invitee to an identified chiropractor. What deception exists in such instance?
It is said that legal principles arise out of factual contexts, not vacuums. It follows that once they have arisen, the principles should be applied to similar fact situations as long as the value judgments which underlie them still withstand scrutiny. Here, a valuable social concern which was faced in Friedman has been extended by appel-lee to a fact situation that is different in kind, not merely degree.
*1130 Although we reverse, we disagree with appellant’s contention that the subject rule under which he was charged was an unconstitutional abridgement of his free speech. In Friedman, the Supreme Court said with respect to the similar Texas rule affecting optometrists:
Rather than stifling commercial speech, § 5.13(d) ensures that information regarding optometrical services will be communicated more fully and accurately to consumers than it had been in the past when optometrists were allowed to convey the information through unstated and ambiguous associations with a trade name. In sum, Texas has done no more than require that commercial information about optometrical services “appear in such a form ... as [is] necessary to prevent its being deceptive.” Virginia Pharmacy [v. Virginia Citizens Consumer Council], 425 U.S. [748], at 772 n. 24, 96 S.Ct. [1817], at 1830 n. 24 [48 L.Ed.2d 346].
440 U.S. at 16, 99 S.Ct. at 897, 59 L.Ed.2d at 114. While concurring in the Friedman Court’s conclusion that the regulation is not unconstitutional and recognizing the societal concern which it addresses, we point out that the Friedman Court was split on the constitutionality issue because the Texas statute banned any trade name, even if the identity of the optometrist was made apparent in the trade name. Three justices thought the statute went too far when it made such a broad proscription. This illustrates the proposition that frequently appellate decisions are not a matter of who is right or wrong,[4] but how many “who’s” there are on each side of debatable value judgments.
DOWNEY, J., concurs.
ANSTEAD, C.J., concurs specially with opinion.

. The word "holistic” is defined in The American Heritage Dictionary 628 (1979) as follows:
1. Of or pertaining to holism. 2. Explaining the importance of the whole and the interdependence of its parts.

. In Thompson and Sebert’s excellent casebook, Remedies: Damages, Equity and Restitution (1983), which lawyers would do well to consider including in their law libraries because of the numerous provocative notes and comments, the co-authors reprinted Judge Brown’s opinion in Mutual of Omaha Insurance Company v. Russell, 402 F.2d 339 (10th Cir.1968). Judge Brown focused sharply on the concept here being discussed when he wrote:
As in nearly all cases, an inquiry of this type involves consideration of the competing interests.
Id. at 345.

. The cited language is as follows:
The possibilities for deception are numerous. The trade name of an optometrical practice can remain unchanged despite changes in the staff of optometrists upon whose skill and care and [sic] public depends when it patronizes the practice. Thus, the public may be attracted by a trade name that reflects the reputation of an optometrist no longer associated with the practice. A trade name frees an optometrist from dependence on his personal reputation to attract clients, and even allows him to assume a new trade name if negligence or misconduct casts a shadow over the old one. By using different trade names at shops under his common ownership, an optometrist can give the public the false impression of competition among the shops. The use of a trade name also facilitates the advertising essential to large-scale commercial practices with numerous branch offices, conduct the State rationally may wish to discourage while not prohibiting commercial optometrical practice altogether.

. To be sure, on occasion there are rights and wrongs governing intermediate appellate court decision-making. For example, when the Florida Supreme Court has enounced a rule of law, upon which a myriad of decisions have been predicated, a district court exceeds its authority if it promulgates a contrary rule. See Jones v. Hoffman, 272 So.2d 529, 533-34 (Fla. 4th DCA) (Owen, J., dissenting), remanded, Hoffman v. Jones, 280 So.2d 431 (Fla.1973).