EMAS, C.J., dissenting.
INTRODUCTION
The issue presented is whether a trial court is required to make a finding that the "proof of guilt is evident or the presumption is great" before it may, at a first appearance hearing, lawfully deny pretrial release to a defendant charged with a capital crime or a crime punishable by life imprisonment. I would answer that question in the affirmative, as we are duty-bound to follow the Florida Supreme Court's decision in State v. Arthur, 390 So. 2d 717 (Fla. 1980), which unambiguously held that "before release on bail pending trial can ever be denied, the state must come forward with a showing that the proof of guilt is evident or the presumption is great." Id. at 720.
The majority opinion embraces a contrary view, creating a procedural mechanism possessed of both logic and practicality. And it may well be that my position possesses neither logic nor practicality, constrained as it is by a faithful adherence to Florida Supreme Court precedent and to that Court's exclusive rulemaking authority. Because the majority opinion is not similarly constrained, I must respectfully dissent.
DISCUSSION
Article I, section 14 of the Florida Constitution provides in pertinent part:
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be *740 entitled to pretrial release on reasonable conditions.[12 ]
In truth and in fact, the divide between the majority position and this dissent is not that wide. I agree that there should be a practical procedural rule in place to allow for a full and fair determination of whether the proof of guilt is evident or the presumption of guilt is great. But the question is who gets to decide (1) whether there should be a rule and (2) what that rule should say? The majority is apparently of the belief that this court can and should fashion such a rule of procedure, notwithstanding binding Florida Supreme Court precedent on the question, and notwithstanding that Court's exclusive rulemaking authority.
I recognize that the majority's "rule" represents an excellent starting point. Indeed this "rule" may ultimately be adopted (at least in some form) by the Florida Supreme Court. Nonetheless, this case is about process, not result. And, in my view, the majority's opinion abandons that process, fashioning its own "reasonable time" procedural rule, in conflict with the clear and unambiguous holding of Arthur.
In Arthur, 390 So. 2d at 717, the Florida Supreme Court examined the aforementioned constitutional provision, and answered two certified questions
holding , (1) that when a person accused of a capital offense or an offense punishable by life imprisonment seeks release on bail, it is within the discretion of the court to grant or deny bail when the proof of guilt is evident or the presumption great; and, (2) that before the court can deny bail the state must have carried the burden of establishing that the proof of guilt is evident or the presumption great.
(Emphasis added).
The Supreme Court concluded its opinion in Arthur with what now appears to be a prescient reaffirmation of its holding:
We hold , therefore, that before release on bail pending trial can ever be denied , the state must come forward with a showing that the proof of guilt is evident or the presumption is great.
Id. at 720 (emphasis added).
Arthur's express holding is unconditional and unambiguous, and has existed for nearly forty years. It admits of no exception to accommodate the practical challenges that might follow.[13] It authorizes no time period during which a defendant may lawfully be held without bond in the absence of a showing by the State (and a finding by the trial court) that the proof of guilt is evident or the presumption great.
Nevertheless, the majority opinion goes to great lengths to suggest that Arthur *741 does not require any showing or any finding of proof evident, presumption great at a first appearance hearing in order to detain a defendant pending a full Arthur hearing. The majority further suggests that any such language in Arthur is merely dicta . This is simply and plainly incorrect. Arthur says what it means and means what it says:
Before release on bail pending trial can ever be denied , the state must come forward with a showing that the proof of guilt is evident or the presumption is great.
Arthur, 390 So. 2d at 720 (emphasis added). No amount of parsing can change this holding, its manifest meaning, and the consequential obligation of the state and the trial court before a defendant's constitutional right to pretrial release may lawfully be denied.
Given Arthur's unambiguous holding, our sole duty is to faithfully follow and apply that holding to the case at hand. We have no authority to overrule the Florida Supreme Court, or to recede from, paraphrase or modify its express holding. Only the Florida Supreme Court has that authority:
[I]t is not the province of the District Court of Appeal to recede from decisions of this Court. A much better solution would be to follow the decisions of the Supreme Court and then certify the cause as being one of great public interest in order to facilitate a re-examination of the decision of this Court in question.
U.S. Steel Corp. v. Save Sand Key, Inc., 303 So. 2d 9, 11 (Fla. 1974) ; Seminole Cty. v. Waddell, 382 So. 2d 357, 358 (Fla. 5th DCA 1980) (noting the district court's obligation to follow Florida Supreme Court precedent that "dealt directly and explicitly with the issue which confronts us in the instant case" and further noting that it is "the province of that court, not ours, to recede from" Supreme Court precedent). See also Bean v. Univ. of Miami, 252 So. 3d 810, 822 (Fla. 3d DCA 2018) (observing: "The District Courts of Appeal follow controlling precedents set by the Florida Supreme Court" and "a District Court of Appeal does not have authority to overrule a decision of the Supreme Court of Florida") (citations omitted); Braggs v. State, 815 So. 2d 657, 660 (Fla. 3d DCA 2002), rev'd on other grounds by State v. Ruiz, 863 So. 2d 1205 (Fla. 2003) (recognizing that until the Florida Supreme Court overrules its own precedent, the District Courts of Appeal are "obliged to follow it").
I am far from the first jurist to recognize the authority which we, as a lower court, are bound to adhere to, even when we ourselves envision what may be a more practical result. In Hoffman v. Jones, 272 So. 2d 529 (Fla. 4th DCA 1973), rev'd 280 So. 2d 431 (Fla. 1973), the Fourth District, in a two-to-one decision, held that the contributory negligence rule should be replaced with principles of comparative negligence. In doing so, the district court reversed a trial court for following existing precedent established by the Florida Supreme Court in Louisville and Nashville Railroad Co. v. Yniestra, 21 Fla. 700 (1886).
In his dissent, Judge William C. Owen, Jr. took the majority to task for overruling clear precedent of the Florida Supreme Court. Like myself, Judge Owen did not disagree with the majority's criticism of the existing rule of law or the need to consider changing it:
My disagreement with the majority lies simply in the fact that if and when such a change is to be wrought by the judiciary, it should be at the hands of the Supreme Court rather than the District Court of Appeal. The doctrine of contributory negligence is firmly entrenched *742 in our jurisprudence, having been re-affirmed many times by the Supreme Court and by the several District Courts of Appeal. The majority decision would appear to flatly overrule a multitude of prior decisions of our Supreme Court, a prerogative which we do not enjoy.
Hoffman, 272 So. 2d at 534.
On review by the Florida Supreme Court, the Fourth District was reminded that it was "bound to follow the case law set forth by this Court." Hoffman v. Jones, 280 So. 2d 431, 434 (Fla. 1973). The Court explained: "To allow a District Court of Appeal to overrule controlling precedent of this Court would be to create chaos and uncertainty in the judicial forum, particularly at the trial level." Id. Instead, the Hoffman court noted: "This is not to say that the District Courts of Appeal are powerless to seek change; they are free to certify questions of great public interest to this Court for consideration, and even to state their reasons for advocating change." Id.
Thus, just as our sister court in Hoffman was duty-bound to apply the clear precedent of the Florida Supreme Court's longstanding and unequivocal precedent established in Yniestra, this court is duty-bound to apply the Florida Supreme Court's longstanding and unequivocal precedent established in Arthur. See also Gilliam v. Stewart, 291 So. 2d 593, 594 (Fla. 1974), overruled on other grounds by Champion v. Gray, 478 So. 2d 17 (Fla. 1985) (observing: "The constitutional system of courts in this State contemplates that only the Supreme Court may overrule its own decisions. This does not necessarily infer that the decisions of this Court are always correct but it does provide a system for the uniform operation of the laws of this State throughout its borders .... We recognize that in this fast changing world the general welfare requires from time to time reconsideration of old concepts. When the district courts decide that ancient precedents should be overruled, we welcome their views and such should be unhesitatingly rendered but, in cases such as this, it is the duty of the district courts under the plain constitutional language to adhere to the former precedents and then certify the decision to us. This will assure uniformity.")
Surely the same practical challenges, which serve as the foundation for the majority opinion, existed in 1980 when the Florida Supreme Court announced its decision in Arthur. Yet Arthur says nothing-explicitly, implicitly or otherwise-about a "reasonable time" for this constitutionally-mandated determination under Article I, section 14. The Florida Supreme Court could have held expressly what the majority appears to infer from the Arthur decision-that the determination of whether the proof of guilt is evident or the presumption is great can be made within a "reasonable time" following a defendant's arrest, but that no such finding (preliminary or otherwise) need be made at the time of the first appearance hearing. However, the Court in Arthur said no such thing. It bears repeating precisely what the Arthur Court did say:
We answer the [certified] questions by holding , (1) that when a person accused of a capital offense or an offense punishable by life imprisonment seeks release on bail, it is within the discretion of the court to grant or deny bail when the proof of guilt is evident or the presumption great; and, (2) that before the court can deny bail the state must have carried the burden of establishing that the proof of guilt is evident or the presumption great.
...
*743 We hold , therefore, that before release on bail pending trial can ever be denied, the state must come forward with a showing that the proof of guilt is evident or the presumption is great.
Id. at 717, 720 (emphasis added).
In light of this unconditional holding, the majority's action creates a procedural mechanism neither contemplated nor authorized by the Florida Supreme Court. There can be little doubt that the majority's "reasonable time" provision, engrafted onto Article I, section 14 and "inferred" from the holding of Arthur, would constitute a rule of court practice and procedure.[14] And there can be little doubt that the Florida Supreme Court in Arthur could have, but did not, create such a "reasonable time" provision to authorize a trial court to hold a defendant without bond (and without the requisite determination) for some period before a formal Arthur hearing can be held. The majority suggests a practical solution to what it perceives as a problem with Arthur's clear holding. Nevertheless, its decision to implement that practical solution, while undoubtedly well-intentioned, strays from our limited judicial role, and creates a procedural rule that runs contrary to Arthur and that can be validly promulgated only by the Florida Supreme Court.
I would adopt our sister court's decision in Ysaza v. State, 222 So. 3d 3 (Fla. 4th DCA 2017). In that case, defendant argued that the first appearance judge improperly held him without bond without first determining whether the singular document presented to the judge (the probable cause affidavit) established proof of guilt was evident or presumption great. The defendant had been charged with numerous first-degree felonies punishable by life and the trial court determined, at first appearance, that it could wait for the Arthur hearing to make the requisite proof evident, presumption great determination. The Fourth District disagreed, holding the trial court erred in denying the defendant pretrial release at first appearance without making a determination that the probable cause affidavit, or some other evidence presented, established that the proof of guilt was evident or presumption great.
The Fourth District reaffirmed this holding in Gray v. State, 257 So. 3d 477 (Fla. 4th DCA 2018), where the court "reiterate[d] and stress[ed]" that "[b]ond cannot be denied at first appearance, without the first appearance court making the necessary findings pursuant to article I, section 14 of the Florida Constitution and [Arthur ]." Id. at 479.
CONCLUSION
Consistent with Article I, section 14, as construed by the Florida Supreme Court in Arthur, I would hold that a trial court cannot deny pretrial release to a defendant, even at first appearance, unless the State makes a showing, and the trial court makes a finding, that the proof of guilt is evident or the presumption great. Given the unambiguous and unconditional holding of Arthur, any deviation from this required determination must come from the Florida Supreme Court, not from this court. I would also certify the following question as one of great public importance:
*744 Does State v. Arthur, 390 So. 2d 717 (Fla. 1980) require a trial court to make a determination that the proof of guilt is evident or the presumption great before a defendant, charged with a capital offense or an offense punishable by life imprisonment, can be denied pretrial release at any time, including at first appearance?

The one other circumstance under which a defendant is not constitutionally entitled to pretrial release (i.e., pretrial detention under Art. I, § 14 Fla. Const. (2018) ) is inapplicable here.

I am mindful of the practical challenges raised by the majority. However, and as the United States Supreme Court observed in Reid v. Covert, 354 U.S. 1, 14, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) :
The concept that the Bill of Rights and other constitutional protections against arbitrary government are inoperative when they become inconvenient, or when expediency dictates otherwise, is a very dangerous doctrine and, if allowed to flourish, would destroy the benefit of a written Constitution and undermine the basis of our government.
Nonetheless, I agree that trial courts and practitioners would likely benefit if the Florida Supreme Court implemented a procedural rule to provide further guidance. I recommend this matter be referred, for further consideration, to the Florida Bar's Criminal Procedure Rules Committee or the Florida Supreme Court Criminal Court Steering Committee.

Further, by engrafting this "reasonable time" requirement, the majority not only contravenes the unequivocal holding of Arthur, but also usurps the Florida Supreme Court's exclusive rulemaking authority. See Article V, § 2(a), Fla. Const. (providing: "The supreme court shall adopt rules for the practice and procedure in all courts ...."); Art. II, § 3, Fla. Const. See also Kalway v. State, 730 So. 2d 861, 862 (Fla. 1st DCA 1999) (observing: "Under the Florida Constitution, only the Florida Supreme Court has the power to adopt rules for the practice and procedure in all courts of this state.")